UNITED STATES, Appellee

v

ROBERT L. McQUAID, Technical Sergeant, U. S. Marine Corps, Appellant

9 USCMA 563, 26 CMR 343

No. 11,052

Decided September 12, 1958

*Major R. D. Humphreys,* USMC, argued the cause for Appellant, Accused.

*Commander Louis L. Milano,* USN, argued the cause for Appellee, United States. With him on the brief was *Lieutenant (jg) John V. L. Ellicott,* USNR.

ROBERT E. QUINN, Chief Judge:

The accused was convicted of six violations of the Uniform Code of Military Justice, including two specifications of larceny of Government property, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. His sentence includes a bad-conduct discharge and confinement at hard labor for three years. Intermediate appellate authorities approved, and he appealed to this Court.

Two instructions by the law officer are assigned as error. First, it is contended that the law officer did not properly advise the court-martial in regard to a purported issue regarding the voluntariness of his confession. See United States v Jones, 7 USCMA 623, 23 CMR 87.

Before we reach the instruction we must determine whether the evidence is sufficient to raise a factual issue for the court-martial's determination. United States v Spivey, 8 USCMA 712, 25 CMR 216. The accused testified for the limited purpose of showing that the pretrial statement offered in evidence by the prosecution was not the product of his own free will. The material parts of his testimony are set out in the margin.[1] It appears therefrom that the accused offered two reasons for making the statement. The first ▓▓▓▓▓ was that he was "eager to get the whole thing over with" because he was tired of being questioned. Since the accused admitted he was not coerced, threatened, or promised anything by the law enforcement agents questioning him, and since he makes no claim he was questioned for a lengthy period of time, this reason for his statement plainly indicates it was the product of his own free will. It supports rather than contradicts the prosecution's showing that the pretrial statement was the result of the accused's own desires. The accused's second reason also shows no unlawful influence.

On cross-examination, the accused

---

[1] "A. Well, when I first was put in the room with Sergeant Singer, I—we both exchanged the normal greetings, 'Hello Don—Hello Mac,' and then I asked him how he felt, and then he says, 'My God, Mac, tell them everything you know.' He says, 'I have already told them everything I know. I have even attempted to take my life', and there was a few other things I can't remember offhand, but one or two other times during the period that Sergeant Singer and I were left alone he did say to me that he would—he felt sure that he would attempt to take his life—he could not take being confined.

"Q. Did he condition that statement with the fact that if you made a statement that might ease his burden he was carrying, that he might not take his life?

"A. In some sense of the word, yes, sir. He explained that he had already made a statement confessing everything, and if I hadn't that he felt it would be all on him and he just couldn't take it.

.    .    .    .    .

"A. He made his statement he attempted suicide the night before, and

he was afraid that he might and he thought that if I would make my statement and help clear the matter up it would ease his conscience and mine.

"Q. Did he tell you he was going to commit suicide if you didn't make a statement?

"A. He didn't tell me he was going to, sir, but he said he was afraid he would.

"Q. He said he was afraid that he might commit suicide because of what—because he was afraid of confinement, being away from his wife?

"A. Among other things, yes, sir.

.    .    .    .    .

"Q. Exactly why did you make the statement?

"A. Well the man's—I won't say it was entirely due to the fact that the man was in the state that he was—I felt sorry for him. I explained to him, and I have explained to several other people—I would rather go to jail for stealing than I would to have a man's life on my conscience for the rest of my life. And another thing, I was eager to get the whole thing over with myself. I was tired of being questioned."

testified he was almost 33 years of age; he is married and has three children; he has been in the Marine Corps for more than 13 years; and he had never gone on liberty with the witness Singer or had him in his own home. It seems highly improbable that a person of the accused's intelligence and background would cast aside his marriage, his parental obligation to three small children, and his 13 years of service in the Marine Corps to face a dishonorable discharge and confinement at hard labor for 20 years, in order to keep another, whose only apparent relationship with him is a purported partnership in crime, from possibly carrying out a statement that "he was afraid" he might attempt suicide. See Hawkins v United States, 158 F2d 652 (CA DC Cir) (1946), cert den 331 US 830, 67 S Ct 1347, 91 L ed 1844.[2] However, we need not look into the possibility that Singer's statement did not induce the accused's confession.

Reduced to its essence, the accused's testimony shows no more than fear of his own conscience. Conscience is indeed a compelling force. But it has its source within not outside oneself. It can hardly be said that the accused's will is subjected to unlawful influence or coercion if it acts in response to the accused's own inner promptings. Conscience, therefore, is not a force which permits one to avoid the legal consequences of his own otherwise free act. At least one court has said that an inducement which has its origin in the conscience of an accused is not an "undue influence" which affects the voluntariness of a pretrial confession. Pinter v State, 203 Miss 344, 34 So2d 723. It is unnecessary to decide whether we need go as far as the *Pinter* hold-

ing at all times and under all circumstances. For example, a different result might be reached if Singer alone had been charged with the offense, and the accused's continued silence could have lead Singer to commit suicide. Thus in Duncan v United States, 197 F2d 935 (CA 5th Cir) (1952), cert den 344 US 885, 73 S Ct 185, 97 L ed 685, the accused's wife asked the accused to confess to the crime and not let her innocent mother take the blame. The accused did so. Later, he contended he had confessed because he feared that if his mother-in-law was charged and prosecuted for the offense she might, in view of her age and the condition of her health, die. The trial judge determined that the issue of voluntariness was present and submitted the matter to the jury for its consideration. See also Perrygo v United States, 2 F2d 181 (CA DC Cir) (1924); cf. Vogt v United States, 156 F2d 308 (CA 5th Cir) (1946).[3] Here it is not claimed that any statement by the accused would have lessened Singer's confinement or reduced the degree of his culpability. The single consideration was that confession by the accused would "ease" the conscience of both Singer and the accused. In short, conscience told Singer and the accused that "their dance was over and the time had come to pay the fiddler." Stein v New York, 346 US 156, 186, 97 L ed 1522, 1543, 73 S Ct 1077 (1953). We conclude, therefore, that the evidence shows only a free and voluntary act by the accused. If there was error in the law officer's instruction on the question of voluntariness, it did not harm the accused. United States v Spivey, supra.

Before leaving this issue, a few addi-

---

[2] This part of the accused's testimony presents a peculiar situation. The defense introduced testimony to the effect that Singer had a reputation as a liar; and throughout the final argument, defense counsel castigated Singer as a liar. Thus, on the one hand, the accused claimed he believed and was, in fact, influenced by Singer's statement that he was afraid he would commit suicide; and on the other, he maintained that Singer was entirely unworthy of belief.

[3] Some state courts hold that no issue of involuntariness is raised if the accused confesses to the crime in the hope of obtaining some collateral benefit, such as the release of a near relative from jail or from further questioning. Pittman v State, 36 Ala App 179, 54 So2d 630, cert den 256 Ala 369, 54 So2d 632; State v Williamson, 339 Mo 1038, 99 SW2d 76. We need not consider whether that rule applies in the military. Cf. Vogt v United States, supra; Perrygo v United States, supra.

tional observations may be appropriate. A confession can be volun▮▮▮▮▮ tary and yet not truthful. See United States v Schwed, 8 USCMA 305, 24 CMR 115. There are circumstances which do not affect the voluntariness of a pretrial statement, but can affect its truthfulness. See Mergner v United States, 147 F2d 572 (CA DC Cir) (1945), cert den 325 US 850, 89 L ed 1971, 65 S Ct 1085. The court-martial may always consider what weight it wishes to give to matters in evidence when deliberating upon the accused's guilt or innocence. In that respect, a confession is no different from other evidence. The court-martial could, therefore, consider whether the accused's purported pangs of conscience were of a nature to lead him to lie about his participation in the offenses charged. The law officer instructed the court-martial in this regard. These instructions are fair and full.

Turning to the sentence part of the trial, the accused contends ▮▮▮▮▮ he was prejudiced by the law officer's instructions. After instructing on the maximum sentence that could be adjudged, the law officer "invited" the court-martial's attention to chapter 25 and paragraph 76 of the Manual for Courts-Martial. These references indicate that the court-martial had available, in the closed session, a copy of the Manual.

In United States v Rinehart, 8 USCMA 402, 24 CMR 212, we noted that the practice of taking a Manual into closed session deliberation was permissible under the Articles of War, but it is not consistent with the provisions of the Uniform Code. The present case, however, was tried before our *Rinehart* decision. Consequently, if use of the Manual is to be condemned here, it must be because it will avert injustice or hardship. Ibid, page 409; United States v Vara, 8 USCMA 651, 25 CMR 155. The accused maintains that he was, in fact, prejudiced because one of the offenses of which he was convicted was larceny, and paragraph 76 refers to paragraph 33*h* which cautions against the retention of thieves in the service. See United States v Fowle, 7 USCMA 349, 22 CMR 139. He argues that, but for the cross-referenced paragraph, the court-martial might not have imposed a punitive discharge. The argument is not impressive. It completely disregards the circumstances of the case. The accused was guilty of a breach of trust, and he faced a penalty which included confinement at hard labor for 20 years. In addition to larceny, he stood convicted of other offenses related to dereliction of his official duties. In this situation, we conclude there is no fair risk the court-martial might not have separated the accused from the service if the Manual had not been used in its closed session deliberations on the sentence. United States v Vara, supra.

Finally, the accused contends he was not accorded a complete post-trial review of his case by the staff ▮▮▮▮▮ legal officer. It is asserted that no advice was provided by the staff legal officer concerning the factual, as distinguished from legal, sufficiency of the evidence. See United States v Fields, 9 USCMA 70, 25 CMR 332. Considered as a whole, the review is sufficient. United States v Murphy, 9 USCMA 316, 26 CMR 96.

In the first part of the review, the staff legal officer discussed the evidence. He referred to certain facts which were "established." He also recited the details of the accused's pretrial statement. Then, he indicated the "findings of guilty are supported by the evidence." Certainly, had he been more precise, the staff legal officer would have specifically included the phrase "beyond a reasonable doubt." We think, however, the words can fairly be inferred from the context of the overall discussion. The advice is, therefore, different from that in such cases as United States v Howes, 9 USCMA 78, 25 CMR 340, and United States v Arthur, 9 USCMA 81, 25 CMR 343. In those cases the advice was clearly limited to "legal" sufficiency.

The decision of the board of review is affirmed.

Judges LATIMER and FERGUSON concur.