**UNITED STATES, Appellee,**

v.

**Staff Sergeant (E–6) Larry W. ROTHROCK, SSN 560–62–2994, United States Army, Appellant.**

**CM 435126.**

U. S. Army Court of Military Review.

6 June 1977.

---

nock, JAGC, and Captain Ralph E. Sharpe, JAGC.

Captain John F. DePue, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel John T. Sherwood, Jr., JAGC, Captain Richard A. Kirby, JAGC, and Captain Robert D. Newberry, JAGC.

Before COOK, DRIBBEN and DeFORD Appellate Military Judges.

### OPINION OF THE COURT

DRIBBEN, Judge:

#### I

Appellant's general court-martial resulted in his conviction, contrary to his pleas, of three instances of impersonating a commissioned officer with intent to defraud; impersonating a military policeman with intent to defraud; wrongfully possessing marijuana; two instances of kidnapping; two instances of robbery; and of violating a Fort Bragg general regulation by concealing a loaded pistol in the trunk of a vehicle brought onto the reservation. These offenses involved violations of Articles 134, 122, and 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 934, 922 and 892.[1]

#### II

■ Before this Court, as he did at trial, appellant challenges the admissibility of a confession he made to investigating agents on 12 March 1976. Appellate defense counsel contend that their client's confession was rendered involuntary by deprivation of

Captain Derryl W. Peden, JAGC, argued the cause for the appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thor-

1. Staff Sergeant Rothrock's court-martial was the result of his robbery of a company's payroll of approximately $73,000.00 at Fort Leonard Wood, Missouri. According to the evidence, appellant telephoned the Fort Leonard Wood Provost Marshal's office, and, after identifying himself as the post commander's aide, requested that a military policeman with an MP vehicle be sent to the airstrip to meet a visiting general. The appellant, dressed as an Army captain, met the military policeman, took his military police uniform and car at gunpoint and handcuffed the military policeman to a tree. Appellant then telephoned a company com-

mander who had just picked up his unit's payroll and identified himself as a major from the post finance office. He stated that there had been a miscomputation of pay and that a military policeman would come to the unit to escort the commander and the payroll back to the finance office. Appellant, dressed as a military policeman, proceeded to the company in the stolen MP vehicle and drove away with the commander and the payroll. The company commander was locked in the trunk of the car at gunpoint in a remote area of the post and appellant departed Fort Leonard Wood with the payroll.

his rights to counsel and by continued questioning in the face of a desire to remain silent. They also contend that the Government failed to rebut the defense assertion that the confession was the fruit of an unlawful search.

These allegations of error may be better understood after recitation of factual background relevant to them. Uncontroverted testimony reflects that at approximately 0900 hours on 12 March 1976, appellant was apprehended in his battalion commander's office at Fort Bragg, North Carolina, by Criminal Investigation Command (CID) agents, including Special Agent Atkinson. Sergeant Rothrock was advised of his rights to remain silent[2] and to counsel[3] and immediately thereafter signed a form indicating his willingness to submit to an interview and waive his right to the presence of counsel. At that time appellant was not questioned. Instead CID agents showed him a search warrant authorizing a search of his quarters, which was about to begin. However, this warrant authorized a search of premises other than those occupied by Sergeant Rothrock.[4] Appellant was then released to the custody of the military police. The CID agents conducted the search, which they finished between 1100 and 1200 hours. They found, among other items, black leather gloves with slits on the side and an uncashed income tax refund check.

During the early afternoon the CID agents took appellant from military police custody and escorted him to their own offices for questioning. He was asked preliminarily if he still understood his rights, as previously explained. He said that he did and was willing to respond to questions.

The initial interrogation was for the most part innocuous aside from the fact that appellant's answers did place him at Fort Leonard Wood at the time of the offenses alleged. However, when apprehended, appellant had apparently been asked where he got the cash he was carrying and he replied that he obtained it from cashing his income tax refund check. When asked in interrogation whether this had been truthful, appellant answered in the negative. Shortly thereafter, at about 1510 hours, appellant refused to answer further questions without assistance of counsel. Agent Atkinson then contacted the staff judge advocate's office to obtain an attorney and released appellant to be fingerprinted.

At this juncture, the testimony of Agent Atkinson varies substantially from that of appellant. According to Agent Atkinson, he made no attempt to continue questioning appellant upon the latter's return. Agent Atkinson limited his remarks to noting that appellant had an outstanding military record and possibly stating that his son's birthday was coming up. However, while Agent Atkinson was typing a property receipt appellant commented "obviously you know your job and I'm not going to give you a hard time. I'll talk to you." The agent then asked whether appellant was willing to make a statement without the presence of counsel, and if he understood that he did not have to make any statement without a lawyer being present. Appellant then made a complete confession concerning the circumstances surrounding the commission of the payroll robbery. It was interrupted, however, when Agent Parker telephoned to inform Agent Atkinson that Captain Nielson, an attorney had arrived to see appellant, pursuant to appellant's request. Agent Atkinson did not inform appellant that the lawyer had arrived because appellant had repudiated his request for counsel. Thereafter, appellant consented to a search of his rented car where the unspent portion of the stolen money was secreted. Prior to signing the consent form, he reaffirmed his willingness to waive counsel. Upon returning from the search of the automobile,

---

2. Article 31(b), UCMJ, 10 U.S.C. § 831.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

4. The room number, although correct, was shown to be in a building other than that in which appellant's room was located. Nevertheless, the CID agents searched the premises actually occupied by appellant.

the parties were confronted by Captain Nielson, who informed appellant that he was an attorney. Appellant responded "I don't want a lawyer" but, when Captain Nielson again told appellant that he wanted to talk to him, appellant requested the opportunity to do so and was provided the time and privacy to consult with the attorney.

Appellant's testimony differed substantially from that of Agent Atkinson. He stated that Atkinson commented on appellant's former status as a commissioned officer and told him that he should confess. Atkinson allegedly asked the appellant whether, as an officer on a court-martial panel, he would have gone easier on an accused person who had confessed. Appellant testified that Atkinson also commented on the shrewdness of the crime and asked how long it took the appellant to devise his plan. The appellant, however, refused to inculpate himself. He testified that Atkinson then stated that the Government's case was solid and asked if the appellant's personal problems had been "that bad." According to the appellant, his ruined personal life "flashed" in his mind and he broke down at this point and agreed to talk with Atkinson about the offenses. Appellant also testified that he was under the impression that when a lawyer arrived he would be so informed. According to Captain Nielson's affidavit, he was able to speak to appellant only by later blocking the path of the agents and appellant and asking appellant, over an agent's objection, whether he wanted counsel.

Based upon our review of the record of trial we are satisfied beyond a reasonable doubt that appellant's confession was voluntarily made for reasons of conscience rather than being generated by any improper continued questioning by CID agents. What the Court of Military Appeals said in *United States v. McQuaid*, 9 U.S.C.M.A. 563, 566, 26 C.M.R. 343, 346 (1958) is applicable here:

"Conscience is indeed a compelling force. But it has its source within not outside oneself. It can hardly be said that the accused's will is subjected to unlawful influence or coercion if it acts in response to the accused's own inner promptings. Conscience, therefore, is not a force which permits one to avoid the legal consequences of his own otherwise free act."

We are also satisfied beyond a reasonable doubt that appellant's confession was not rendered inadmissible by his earlier asserted desire to consult with counsel. The case at bar, unlike the situation in *United States v. McOmber*, 1 M.J. 380 (1976), presents no "surreptitious interrogation technique" designed to circumvent an on-going attorney-client relationship. We reject any contention that, once an accused has invoked his right to counsel, it is thereafter impermissible to obtain a statement from him although he unilaterally and without any encouragement by his interrogators repudiates this right prior to consultation with counsel. *United States v. Hodge*, 487 F.2d 945 (5th Cir. 1973).

■ We are further convinced beyond a reasonable doubt that appellant's confession was not the fruit of an unlawful search. First of all, appellant was advised of and shown a search warrant authorizing a search of premises other than those he actually occupied. From what he was shown, it was as logical for him to assume that those premises where his gloves and income tax check were located would not be searched as to assume otherwise. Second, this evidence was neither referred to nor utilized by the CID agents while interrogating appellant. Third, by the time appellant was interrogated, the investigation of the incident at Fort Leonard Wood had progressed sufficiently to produce evidence other than that of an uncashed income check to warrant a belief that appellant had obtained money as a result of the robbery at that post rather than from a Government refund of overpaid taxes.

Our finding that appellant's confession was a free, knowing and voluntary act on his part is further substantiated by the evidence concerning his military background adduced during the testimony on

the motion. Appellant was a former officer with training in both police interrogation techniques and military justice. By his own admission during cross-examination, appellant was very cautious during the period between the cessation of questioning and his decision to allow it to continue without the presence of counsel to insure that he said nothing to admit to an offense. Appellant was completely conscious of his surroundings and aware of the repercussions of his actions during the entire period of time he spent under interrogation and gave a free, knowing and voluntary statement.

### III

▉ Appellant also alleges that the convening authority abused his discretion in failing to heed a defense request for delay before taking action on 10 August 1975 on the record of trial. The operative facts are thus. On Thursday, 5 August, a representative of the Government served copies of the 497 page record of trial and the 51 page post-trial review on appellant's detailed trial defense counsel. This officer refused to acknowledge receipt of the record and review, because he believed that appellant's individual defense counsel was the proper party to be served. Both officers were stationed at Fort Bragg, North Carolina throughout the time in question.[5]

The detailed defense counsel recalls advising the individual counsel by telephone "something before the weekend" that he had been served with the record and review. Although the individual counsel has no recollection of the exact date, his notes reflect that he was not so informed until Monday, 9 August. Counsel discussed the length of the documents and the need for delay. They agreed that detailed defense counsel would request an additional three days to permit preparation of a *Goode*[6]

response to the post-trial review, which he did on 9 August. He also prepared a petition for clemency which was presented with the record and post-trial review to the convening authority.

Detailed defense counsel did not deliver the record of trial and the post-trial review to the individual counsel until 1900 hours on 10 August at which time he told the latter that the requested delay was denied. Trial defense counsel learned that the request was denied on 10 August as a result of his call to the XVIIIth Airborne Corps staff judge advocate's office. The individual counsel's response to the post-trial review, completed on 11 August, is attached to the record for our consideration.

We are disturbed by the action, or perhaps more appropriately the lack of action, and apparent attitude of counsel on both sides of this case. Had the Government complied with the request to serve the individual defense counsel, this issue may have been avoided altogether. On the other hand, the detailed counsel displayed at best an underdeveloped sense of urgency in getting the record and review to the individual counsel. The latter cannot in our view stand free of blame in this instance. He should have directed an immediate course of action for the defense team when he learned of the service of the post-trial review and record of trial upon the detailed defense counsel.

Again we are compelled to express our exasperation with the course of action taken by the Government in refusing the defense requested delay in the convening authority taking his action. This would have been a delay attributable to the defense rather than precipitating a violation of the rule of post-trial review expounded in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 138, 48 C.M.R. 751, 754 (1974)[7] and

---

5. The detailed defense counsel was assigned to the John F. Kennedy Center for Military Assistance; individual defense counsel to the 82d Airborne Division.

6. *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

7. "To paraphrase *Burton*, . . . a presumption of a denial of speedy disposition of the case will arise when the accused is continuously under restraint after trial and the convening authority does not promulgate his formal and final action within 90 days of the date of such restraint after completion of trial."

*United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974).

Our dissatisfaction with the procedure employed in this case, however, does not cause us to conclude that error was committed.

Defense counsel were given five days [8] to respond to the post-trial review and they collectively failed to effectively use the allocated time. We have reviewed the defense response including the petition for clemency with the record of trial and the post-trial review and are convinced that the information provided would not have made a substantial impact upon the convening authority.[9] The post-trial review was adequate, complete, and legally correct. Accordingly, we find no merit in this assignment of error.

We have examined the remaining allegations of error and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge COOK and Judge DeFORD concur.

---

**8.** We believe that five days was adequate for the defense team to review the required matters had they used their time profitably. Their failure to provide a timely response resulted in a waiver of any error in the post-trial review. *United States v. Goode, supra; United States v.*

*Myhrberg,* 2 M.J. 534 (A.C.M.R. 16 July 1976) (En Banc).

**9.** The convening authority had received the clemency petition prior to taking his post-trial action.