**UNITED STATES, Appellee,**

v.

**Shawn TURNER, Private, U. S. Army, Appellant.**

No. 34,608.

SPCM 12242.

U. S. Court of Military Appeals.

June 5, 1978.

*Captain Charles F. Schmit, Jr.* argued the cause for Appellant, Accused. With him on the brief were *Colonel Robert B. Clarke, Lieutenant Colonel John R. Thornock, Major Benjamin A. Sims,* and *Captain Buren R. Shields, III.*

*Captain Paul W. Jacobson* argued the cause for Appellee, United States. With him on the brief were *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller,* and *Captain Laurence M. Huffman.*

FLETCHER, Chief Judge:

The appellant successfully[1] petitioned this court to review his conviction for larceny, wrongful appropriation, and burglary with intent to commit larceny.[2] The first two crimes were charged under Article 121, Uniform Code of Military Justice, 10 U.S.C. 921; the third under Article 129, U.C.M.J., 10 U.S.C. 929.

There is no dispute over the facts surrounding the confessions[3] upon which ap-

---

1. The granted issue was phrased in terms of whether the United States Army Court of Military Review erred in finding that failure to afford civilian counsel access to appellant during two interrogations did not render appellant's written and oral statements involuntary.

2. The findings resulted in a bad-conduct discharge, confinement at hard labor for 4 months, and forfeiture of $200 pay per month for 4 months. Approval by the convening authority and affirmance by the Court of Military Review followed.

3. These Prosecution Exhibits 4 and 5 constituted the primary evidence against appellant.

pellant's conviction is based. The appellant was taken to CID Agent Kurtzrock's office for interrogation regarding specification 2 of Charge I (alleging wrongful appropriation of 2 rings).

While the appellant was in an interrogation room, the agent was confronted by Richard Lovelace, a civilian attorney representing the appellant in other matters, who announced that he considered himself "counsel for him (appellant) generally." Neither was appellant informed of the presence of Lovelace, nor was the latter's request to see his client honored.

After an advisement of rights under Article 31, U.C.M.J. and *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967), appellant stated he neither wanted an attorney, nor did he wish to discuss his rights with anyone and thereupon executed a waiver of rights. A confession was taken by the CID agent and only then was Lovelace permitted to consult his client.

Some five days later the appellant was interrogated regarding specification one of Charge I and the single specification under Charge II. Again his constitutional rights were explained and the accused executed the waiver and gave a statement.

In answer to questions elicited at trial from the CID agent regarding this later statement by accused the agent responded thus:

Q. Ok. Did he appear to understand his rights?

A. Yes, sir, he did.

Q. What was his answer to you?

A. His answer to me was my lawyer told me not to tell you anything, Mr. Kurtzrock, but I could care less; I'm going to tell you what—I don't care what my lawyer said.

Q. Ok. And did he, did he request his lawyer be present while he told you?

A. No, sir, he did not.

■ As we view the granted issue, it has two considerational aspects. First, was the denial to civilian counsel of the opportunity to converse with his client prior to the first interrogation a denial of appellant's Sixth Amendment rights, rendering the first confession inadmissible? Secondly, may an individual, after conference with his attorney, waive his presence at an interrogation? We answer both questions affirmatively.

We adopt the able separate opinion (except for the first and last paragraphs) which Judge Costello filed when the Court of Military Review decided this case. It is reported at 3 M.J. 572–75. This opinion properly resolved the first question to which we have just referred.

■ Turning to the facts surrounding the second interrogation, we see that the appellant not only had the privilege of advice of his counsel, but knowingly, intelligently and voluntarily waived his privilege against self-incrimination. This is consistent with Article 31, UCMJ, and *United States v. Tempia, supra.* Compare *United States v. Hill,* 5 M.J. 114, 116 (C.M.A.1978) (Fletcher, C. J., dissenting). Thus this second confession was properly admitted.

The decision of the United States Army Court of Military Review is reversed. The finding of guilty of specification 2 of Charge I is set aside, and that specification is dismissed. The record is returned to the Judge Advocate General of the Army for resubmission to the Court of Military Review for reassessment of the sentence based on the remaining offenses.

\Judge PERRY concurs.

COOK, Judge (concurring in part and dissenting in part):

I disagree with the majority's conclusion that the first statement by the accused was inadmissible. As they accept Judge Costello's dissent in the Court of Military Review to sustain their conclusion that the accused was denied his "Sixth Amendment right" and that made the statement inadmissible, I am constrained to explicate my disagreement in terms of Judge Costello's opinion.

The central premise of Judge Costello's opinion is incorrect because it fails to recognize that the constitutional right to counsel does not arise before formal charges are filed or an adversary judicial proceeding, such as a preliminary hearing or an arraignment, takes place. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977); *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Here, when the agents undertook to talk to the accused, no formal charge had yet been made and no preliminary judicial proceeding had been had. Thus, his reliance on *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), where the accused had been indicted before his interrogation by the police, is misplaced. Similarly, it is mistaken to rely upon *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). While in that case the Supreme Court did refer to *Escobedo,* in the *Kirby* case it explained that the source of the right to the presence of counsel at a "custodial interrogation" is not the Sixth Amendment's provision for the assistance of counsel in a criminal prosecution, but is "based exclusively upon the Fifth and Fourteenth Amendment privilege against compulsory self-incrimination, upon the theory that custodial *interrogation* is inherently coercive." *Kirby v. Illinois, supra,* 406 U.S. at 688, 92 S.Ct. at 1881. *Brewer v. Williams, supra,* 430 U.S. at 397–98, 97 S.Ct. 1232, reaffirmed that explanation. Consequently, as far as the constitutional provision for the assistance of counsel is concerned, a custodial interrogation of the kind in issue may be initiated without the presence of a lawyer for the person to be interrogated. True, the first step in the interrogation process must be to advise the individual that he has a right to remain silent and a right to counsel, but it is important to observe that, when not requested expressly by the individual, the absence of counsel during the advice is not error.

I turn, therefore, to the other sources pertaining to the right to counsel at a police interrogation during a stage of investigation prior to formal charge or any adversary judicial proceeding. Contrary to the rule followed by the Federal civilian courts in a number of circuits, this Court, to effectuate the right to remain silent under Article 31 of the Uniform Code, imposed a duty upon a law enforcement agent, proposing to question an accused or suspect, to concern himself also with whether the accused already had a lawyer representing him in the investigation. The duty, the conditions giving rise to it, and the consequence of a failure to fulfill it are stated as follows:

> [O]nce an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code.

*United States v. McOmber,* 1 M.J. 380, 383 (C.M.A.1976).

Judge Costello reasoned that "[t]he absence of any immediate threat to appellant's statutory rights to appointed counsel and of any request by him for counsel remove this case from the *McOmber/Lowry* area." [1] *United States v. Turner,* 3 M.J. 570, 573 (A.C.M.R.1977). These reasons do not, in my opinion, make the *McOmber* rule inapplicable.

Consent to an interrogation without the presence of counsel may perhaps constitute a waiver of the *McOmber* requirement, but it would not "remove" the situation from the ambit of the rule. Two circumstances, however, impel me to conclude that the rule is, indeed, inapplicable. First, the rule is operative only when the investigator "is on notice that an attorney has undertaken to represent an individual in a military criminal investigation." 1 M.J. at 383. In my opinion, the trial judge could properly find that the investigator was not on notice that civilian counsel had "undertaken" to represent the accused in "a military criminal investigation." Counsel maintained that he had represented the accused "on some other matters"; he did not say he was to rep-.

---

1. *United States v. Lowry,* 2 M.J. 55 (C.M.A. 1976).

resent the accused in the pending investigation, and he did not purport to be accused's counsel in any other military criminal investigation. Absent any such engagement of counsel, *McOmber* did not require the agent to allow counsel the opportunity to attend the interrogation of the accused.

The second circumstance which leads me to conclude that the agent could properly treat counsel as an interloper and refuse to allow him to attend the interrogation is that the *McOmber* rule was promulgated after the statement was obtained. In my opinion, the rule is not retroactive.[2]

Perceiving no legal impediment to the initiation of the interrogation without counsel, and there being full compliance with the legal requirements as to preliminary advice to the accused of the right to remain silent and the right to counsel and a knowing and voluntary waiver of those rights by the accused, I agree with the majority of the Court of Military Review that the first pretrial statement was properly admitted into evidence.

As to the second pretrial statement, I agree with the majority, here, that it was properly admitted into evidence. However, I am uncertain of the majority's reasons, and, therefore, set forth my own.

The *McOmber* rule evolved from the Court's "concern" with "whether an attorney once appointed or retained to represent a military suspect must first be contacted by investigators who have notice of such representation when they wish to question the suspect." *Id.* at 382. In my separate opinion, I commented on "a number of questions" raised by the rule, including that of the period of "advance notice [that] must be given to counsel of the time and place of the interview." *Id.* at 383. This record is silent as to any notice to any lawyer for the accused. I have already indicated my belief that *McOmber* does not apply retroactively to an interrogation completed prior to the date of its publication, but even if the rule is operative because the trial took place after publication of the *McOmber* opinion,

the prerequisites for its application were not, in my opinion, present. *Cf. Johnson v. New Jersey,* 384 U.S. 719, 721, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Earlier, I pointed out that the condition giving rise to the obligation to apprise counsel of an impending investigation is knowledge on the part of the agent that an attorney "has undertaken" to represent the person to be questioned in a military criminal investigation. In my discussion of the admissibility of the first pretrial statement, I observed that the declaration by civilian counsel could reasonably be viewed as insufficient to put the agent on notice that he was representing the accused in a military criminal investigation. At the initial interrogation, the accused expressly rejected the opportunity to have counsel present. One would suppose that if a counsel represented the accused after the interrogation, counsel would have communicated that fact to the CID, both to obtain a report as to what had transpired at the first interrogation or to put them on notice of his actual authority to represent the accused during the remainder of the investigation. No such inquiry or notice appears in the record. In these circumstances, the trial judge could reasonably conclude that no agent had notice that accused was represented by counsel when the accused was called for the second interview. To this point, therefore, there was no violation of the *McOmber* rule.

*McOmber* is silent about an agent's responsibility in regard to a defense counsel if he is first put on notice of counsel's existence at the interrogation itself. That, in my opinion, is what happened here when the accused, after being advised of his right to counsel, declared that he "had already talked to his lawyer" and had been advised "not to cooperate and not to say anything more," but that he "could care less" about that advice, and he was going to "tell . . . [the agent] all about it."

I do not construe *McOmber* to require an agent, informed for the first time by the person to be questioned that he has a law-

2. In *Lowry, supra,* the Court applied the *McOmber* rule to a statement made prior to promulgation of the rule, but the issue of retroactivity was not considered.

yer, to delay an interrogation already in progress in order to notify counsel of the proceeding and to afford him a reasonable opportunity to attend, especially when the individual indicates that his lawyer has given him advice that he does not wish to follow. As the record demonstrates the accused's second statement was, in all respects, the product of his own unfettered will, it was properly admitted into evidence.

I would affirm the decision of the United States Army Court of Military Review.