UNITED STATES

v.

**Airman Basic Robert G. COURNEY, FR 376–56–1737, United States Air Force.**

**ACM 22810.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 3 April 1980.

Decided 21 April 1981.

Appellate Counsel for the Accused: Colonel Larry G. Stephens, Colonel George R. Stevens and Captain Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before POWELL, MILES and MAHONEY, Appellate Military Judges.

## DECISION

MILES, Judge:

The accused's conviction for receiving stolen property rests, in part, on his pretrial statement accepted into evidence over defense objection. The accused, although he had been advised by his assigned counsel not to talk with Air Force Office of Special Investigation (OSI) agents, decided not to follow that advice and, on his own initiative, went to the OSI office to give them a statement. Under the particular facts of this case, we hold the statement admissible although the OSI failed to contact his military counsel prior to interviewing him.

The accused was convicted by a military judge, sitting as a general court-martial, of attempted larceny, conspiracy to commit larceny, housebreaking and receiving stolen property, violations of Articles 80, 81, 130 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 881, 930 and 934. The accused pled guilty only to housebreaking and attempted larceny of some items but was convicted of all charges and specifications.

During the early morning hours of 27 May 1979, the accused and two other airmen were apprehended by security police inside the base exchange. The physical evidence establishing the break-in and attempted larceny by the accused and his companions was abundant and compelling. After a duly authorized search, additional items stolen earlier from the base exchange were also found in accused's barracks room.

Those items formed the basis for the charge of receiving stolen property.

When apprehended the accused was advised fully of his rights, but was questioned only to determine his identity and where he lived. Later that morning, an OSI agent, after proper advice, attempted to obtain a statement from the accused. The accused declined to make any statement and requested an attorney. The interview ended, and the following week OSI personnel learned that the area defense counsel was assigned to represent the accused.

Two months later on 27 July 1979, the accused, on his own initiative, went to the OSI office and asked to speak with an OSI agent about his apprehension at the base exchange. The OSI agent, Mr. Persinger, called the base legal office and asked if he could interview the accused. After he was told he could, he asked the accused to write out, in his own words, a statement as to why he was at the OSI office. The accused in a handwritten statement noted he had talked with the Air Force area defense counsel and had been advised not to make any statements to the OSI. But since then, he had thought about it and "decided to talk with OSI personnel and do no[t] want to follow the advice of my lawyer. On this date, I have voluntary [sic] gone to OSI office and talked with Mr. Persinger." Mr. Persinger then fully advised the accused of his rights. The accused said he completely understood those rights, wanted to make a statement, and waived any right to consult an attorney further or have an attorney present. Mr. Persinger did not call the area defense counsel or otherwise notify accused's counsel as to this interview.

The accused then gave a detailed written statement to the OSI concerning the offenses which were subsequently charged against him. Although exculpatory in part, he admitted he knew the property earlier found in his room was stolen when he received it. At trial, this latter statement discussing the offense was accepted in evidence over defense objection that it was obtained in violation of accused's rights under Articles 27 and 31 of the Uniform Code of Military Justice, 10 U.S.C. §§ 827 and 831. In admitting the statement, the military judge declared that the facts clearly established that the accused waived the presence of his attorney by expressly repudiating the advice of his attorney. He also noted if there were any indication in this case that the accused

had been directed or requested, whether directly or indirectly, to go to the OSI office, I would not hesitate to invoke the ruling of United States v. McOmber, 1 M.J. 380 (C.M.A.1976) regarding the requirement to notify the accused's attorney.

Appellate defense counsel assert that the ruling of the military judge admitting the accused's statement was error. They argue that under United States v. McOmber, 1 M.J. 380 (C.M.A.1976), the OSI were absolutely required to give notice of the interview to the accused's assigned military counsel and that, failing such notice, the statement was inadmissible. We disagree.

In United States v. McOmber, supra, the United States Court of Military Appeals held that once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code. Continued interrogation under such circumstances was condemned as "a surreptitious interrogation technique which plainly seeks to deprive an individual of the effective assistance of counsel." United States v. McOmber, supra at 382.

The salutary rule fashioned in McOmber to protect an accused's right to counsel has since been interpreted and applied or distinguished in a variety of cases.[1] However, no

1. See, for example, United States v. Muldoon, 10 M.J. 254 (C.M.A.1981); United States v. McDonald, 9 M.J. 81 (C.M.A.1980); United States v. Littlejohn, 7 M.J. 200 (C.M.A.1979); United States v. Harris, 7 M.J. 154 (C.M.A. 1979); United States v. Quintana, 5 M.J. 484

previous decision has tested its application to facts identical to those involved here.[2]

In our view, the accused's statement was admissible against him although the OSI agent failed to notify the accused's counsel that the accused wanted to talk with the OSI. The rights in question to remain silent and to the advice and presence of an attorney are personal to an accused not his attorney. As with all rights, they may be relinquished and given up voluntarily.[3] In this case, they clearly were when the accused repudiated the advice of his attorney and on his own initiative went to the OSI office to give a statement.

Several facts are important to the result reached here. The accused was not in custody or under any restraint which imposed any coercive influence on him. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). No "surreptitious interrogation technique" condemned by *United States v. McOmber, supra*, at 382, was involved as we find the OSI in no way, directly or indirectly, prompted the interview or caused it to occur. The accused had the opportunity and did consult counsel. *United States v. Turner*, 5 M.J. 148 (C.M.A.1978). Additionally, no adversary judicial proceedings had been initiated. *United States v. Massiah*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *United States v. Turner* (Cook, J.), *supra*, at 150.

Since the accused "not only had the privilege of advice of his counsel but knowingly, intelligently and voluntarily waived his privilege against selfincrimination", *United States v. Turner, supra*, at 149, we find the

military judge did not err in admitting the statement into evidence.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

POWELL, Senior Judge, and MAHONEY, Judge, concur.

---

(C.M.A.1978); *United States v. Turner*, 5 M.J. 148 (C.M.A.1978); *United States v. Hill*, 5 M.J. 114 (C.M.A.1978); *United States v. Lowry*, 2 M.J. 55 (C.M.A.1976); *United States v. Rothrock*, 3 M.J. 776 (A.C.M.R.1977), pet. denied, 3 M.J. 483 (C.M.A.1977).

2. *United States v. Turner, supra*, is close in point but involved an accused's voluntary decision not to follow the advice of civilian counsel.

3. It is well settled that assertion of the right to remain silent or the right to counsel does not forever bar subsequent interviews by law enforcement personnel. See *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *United States v. Quintana* and *United States v. Turner*, both *supra* note 1. However, "the fact that the request has been made makes it more difficult for the Government to satisfy its burden of establishing that an accused has voluntarily waived the right to counsel and the right to have counsel present at an interview." *United States v. Hill, supra* note 1, at 115.