UNITED STATES, Appellee,

v.

Curtis L. SHEPARD, Specialist
U.S. Army, Appellant.

No. 67,954.
CMR No. 9001374.

U.S. Court of Military Appeals.

Argued Jan. 7, 1993.

Decided Sept. 30, 1993.

For Appellant: *Major Robin L. Hall* (argued); *Colonel Malcolm H. Squires, Jr.* and *Captain Mark L. Toole* (on brief); *Lieutenant Colonel James H. Weise* and *Captain Michael Huber.*

For Appellee: *Captain Robert J. Walters* (argued); *Colonel Dayton M. Cramer,*

Lieutenant Colonel Joseph A. Russelburg,
Major Joseph C. Swetnam (on brief).

## Opinion of the Court

SULLIVAN, Chief Judge:.

During April of 1990 appellant was tried by a general court-martial composed of officer and enlisted members at Frankfurt and Butzbach, Germany. Contrary to his pleas, he was found guilty of unpremeditated murder, in violation of Article 118(2), Uniform Code of Military Justice, 10 USC § 918(2). He was sentenced to a dishonorable discharge, confinement for life, total forfeitures, and reduction to Private E1. The convening authority approved the adjudged sentence on July 2, 1990. On January 8, 1992, the Court of Military Review affirmed the findings and the sentence. 34 MJ 583.

This Court granted review on the following three issues:

### I

WHETHER THE MILITARY JUDGE ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS UNWARNED STATEMENTS MADE IN RESPONSE TO QUESTIONING FROM HIS PLATOON SERGEANT, SERGEANT FIRST CLASS LOGAN.

### II

WHETHER THE ARMY COURT ERRED IN APPLYING A WAIVER ANALYSIS TO THE MILITARY JUDGE'S ERROR IN INSTRUCTING THE MEMBERS REGARDING ERRONEOUSLY ADMITTED HEARSAY EVIDENCE WHERE THE TRIAL DEFENSE COUNSEL ARTICULATELY EXPRESSED HIS POSITION ON THE MATTER WHEN THE ISSUE FIRST AROSE AND ADEQUATELY PRESERVED SPECIALIST SHEPARD'S APPELLATE COMPLAINT.

### III

WHETHER THE ARMY COURT ERRED IN FINDING THAT APPELLANT'S RIGHT TO COUNSEL WAS NOT VIOLATED WHEN HIS DETAILED DEFENSE COUNSEL WAS DENIED ACCESS TO HIM DURING INTERROGATION BY CRIMINAL INVESTIGATION COMMAND (CID) AGENTS.

We resolve these three issues in the Government's favor.

The Court of Military Review established the following factual record:

The appellant killed his wife during a domestic quarrel in their off-post German apartment as he was preparing for the duty day. She had returned that morning after spending the previous four days at the home of a friend. Her temporary absence and her intent to permanently leave the appellant were the subject of the domestic quarrel. As a result of the quarrel and killing, the appellant failed to report for the 0630 formation at his unit. When the appellant did arrive shortly after 0630, he approached his squad leader and told him, "You need to call the MPs [military police]." When the squad leader asked why, the appellant said, "You don't know yet. You'll find out. I just need the MPs." The appellant was very excited and was speaking very rapidly. The squad leader felt that there must be something far more serious involved than missing formation, but he did not inquire further and sent the appellant to talk to Sergeant Logan, the platoon sergeant.

Knowing that the appellant had missed formation and thinking that the appellant wished to discuss his tardiness, but without advising the appellant of his rights under Article 31, UCMJ, 10 USC § 831, *Sergeant Logan told the appellant to come into his office. The appellant blurted out that he needed to go to jail. Sergeant Logan, confused by this statement, made "small talk" by inquiring about appellant's wife and children. When Sergeant Logan inquired why the appellant felt he needed to go to jail, the appellant said that he had killed his wife.* Sergeant Logan didn't believe

him because the appellant had used the excuse of injury of his wife for his tardiness before. *But, on this occasion, Sergeant Logan asked for further details. The appellant said he killed his wife in his house with an axe and that he was sure she was dead because he watched her die.* Sergeant Logan, still skeptical, took the appellant to the first sergeant and told the appellant to repeat his story. The appellant repeated to the first sergeant that he had killed his wife.

The first sergeant, recognizing a rights-warning problem, told the appellant to stop talking and had Sergeant Logan notify the MPs and request that an ambulance be dispatched to the appellant's apartment. At that point, the appellant spontaneously gave Sergeant Logan his house keys and said that his young children were locked in their bedroom. Sergeant Logan then noticed for the first time that there was blood on the appellant's boots and uniform, and began to believe that the appellant was telling the truth. After Sergeant Logan notified the MPs, the first sergeant apprehended the appellant and assigned another noncommissioned officer to guard the appellant until the military police arrived.

Two hours later, Special Agent Fratichelli, Criminal Investigation Command (CID), took a statement from the appellant after the appellant was transported to the CID office by the military police. The CID agent was not involved in the initial report or investigation of the case and was only vaguely aware that the appellant had "spontaneously" reported the killing to "someone," possibly an MP desk sergeant. He was unaware of the statements made to Sergeant Logan or the first sergeant. Mr. Fratichelli advised the appellant of his rights but did not give a "cleansing warning" as part of the rights advisement prior to taking the appellant's statement. Waiving his right to remain silent and his right to counsel, the appellant admitted he killed his wife with a kitchen knife. The CID interview began at about 1000; the appellant's statement, reduced to writing and re-viewed by the appellant, was signed by him at 1130.

Shortly after 1100, the local senior defense counsel, hearing that a suspect was being questioned by the CID for murder, appointed CPT R, a defense counsel, to represent the appellant. CPT R immediately called the CID office and asked to speak with the appellant. The CID agent-in-charge checked on the progress of the interview and was told that the appellant was reviewing the completed typewritten statement prior to signing it. The CID chief, at about 1120, after consulting with the trial counsel and without notifying the appellant or agent Fratichelli, refused CPT R's request to speak with the appellant. CPT R's subsequent attempts to gain access to the appellant by telephoning the trial counsel and by visiting the CID office were also to no avail. The appellant did not know of CPT R's appointment to represent him, of her immediate availability or of her attempt to contact him.

34 MJ at 585–86 (emphasis added; footnote omitted).

## I

■ Appellant first argues that the military judge erred by failing to grant a defense motion to suppress his unwarned statements made in response to questioning by his platoon sergeant, Sergeant First Class (SFC) Logan. He concedes that, as a matter of fact, SFC Logan initially suspected him only of missing formation. Final Brief at 6. Nevertheless, he asserts that, in view of his supervisor's prior knowledge of his troubled domestic situation and his additional statement, "I need to go to jail," his supervisor "should have reasonably suspected" that a more serious offense had occurred. Thus, he contends that this progressively developed suspicion warranted immediate rights' advice without which his subsequent, more particular, admissions concerning his wife's murder were inadmissible. *See* Art. 31(d). Final Brief at 7–8. We disagree.

Article 31 is offense-specific, at least in one respect. *Cf. McNeil v. Wisconsin,* — U.S. —, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *United States v. Kendig,* 36 MJ 291, 295–96 (CMA 1993). That Article expressly requires that a servicemember accused or suspected of committing an offense under the UCMJ be advised "of the nature of the accusation" against him. Art. 31(b). Furthermore, we have recognized that failure to provide advice as to an offense different from the one suspected does not bar admission of statements concerning the unsuspected offense. *United States v. Lewis,* 12 MJ 205 (CMA 1982). Also, "[n]ot every inculpatory statement made by an accused in conversation with another is inadmissible because of a failure to warn him of his rights under Article 31." *United States v. Dandaneau,* 5 USCMA 462, 464, 18 CMR 86, 88 (1955). "This Court has long intimated that [Article 31] requires warnings only when questioning is done during an official law-enforcement investigation or disciplinary inquiry." *United States v. Loukas,* 29 MJ 385, 387 (CMA 1990); *see also United States v. Duga,* 10 MJ 206 (CMA 1981); *United States v. Gibson,* 3 USCMA 746, 14 CMR 164 (1954).

We agree with the Court of Military Review that appellant's statements to SFC Logan concerning the murder of Mrs. Shepard were not the product of an interrogation or a request for a statement within the meaning of Article 31. *See United States v. Jones,* 6 MJ 226, 230 (CMA 1979). SFC Logan did not suspect or have any reason to suspect that appellant had just murdered his wife. His purpose in questioning appellant was to determine the reason for his absence at formation and assess the general welfare of his family. Art. 86, UCMJ, 10 USC § 886. In such circumstances, evidence of appellant's gratuitous and spontaneous admission to a completely unsuspected offense of killing his wife (Art. 118) was

not barred by Article 31. *United States v. Miller,* 7 MJ 90 (CMA 1979); *see also United States v. Lewis, supra; cf. United States v. Dowell,* 10 MJ 36, 40 (CMA 1980).

■ Of course, there may have been a point where SFC Logan should have advised appellant of his rights under this statute. SFC Logan's suspicion was surely raised after appellant's admission that he killed his wife. However, even at that time, warnings might not be required if justified by some possible exception to Article 31, *e.g.,* the "public safety" exception. *See United States v. Jones,* 26 MJ 353, 357 (CMA 1988). In any event, we agree with the court below that, even if it was error to admit appellant's entire statement, it was harmless error because of other evidence in this case including his earlier admissible statement of guilt. *See generally Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

## II

■ Appellant next argues that the Court of Military Review improperly applied a waiver analysis to error it found the judge made in instructing the members on the limited use of certain improperly admitted hearsay evidence. He also disputes the alternative conclusion of that court that the erroneous instruction on this evidence was harmless. We conclude that both admission of this evidence and the deficiencies in the instruction thereon were harmless errors. Art. 59(a), UCMJ, 10 USC § 859(a).

The challenged evidence consisted of testimony by three persons as to the victim's prior assertions of physical abuse and threats by her husband. The out-of-court statements of the victim were offered to circumstantially show her fear of her husband prior to the time of the offense. Such a fact, the prosecutor asserted, was somehow relevant[1] to proving that appellant

---

1. TC: Your Honor, the Government's burden is showing both for the offense of murder, intent to murder and premeditation to murder. The logical relevance that it would have is to show Specialist Shepard's intent at this time to murder his wife and his plan to murder his wife

would be proved by the fact that Mrs. Shepard was in fact staying away from her quarters. She was afraid to go home because she was afraid, if she did go home, Specialist Shepard would kill her. And this state of mind of hers was communicated by prior interaction and pri-

possessed an intent to kill his wife. *Cf. State v. Crafts*, 226 Conn. 237, 627 A.2d 877 (1993).

The Court of Military Review summarized the challenged statements admitted by the military judge as follows:

> The government ... moved to admit statements of the victim, Sherran Shepard, made to three different persons. To *Mrs. Kubeka*, a babysitter and confidant, *Sherran Shepard* had stated, four days prior to her death, that she "did not want to stay with a drunk who beat her." Because of the appellant's violent conduct, Mrs. Shepard asked Mrs. Kubeka if she (Shepard) could stay with her temporarily. Mrs. Kubeka also testified that she had that same day accompanied Sherran Shepard to the legal assistance office when Mrs. Shepard was seeking information on a divorce. To *Mrs. Merica*, Sherran Shepard's work supervisor, the victim expressed her fear of the appellant, said that he beat her and threatened to kill her, and showed Mrs. Merica bruises on her body allegedly inflicted by the appellant. *To Mrs. Carter*, a drug and alcohol counselor, Sherran Shepard discussed her failing marriage and related that the appellant had threatened her with a knife with which he cut her clothing and her hair.

34 MJ at 587 (emphasis added; footnote omitted).

The military judge allowed the challenged testimony as hearsay evidence admissible under Mil.R.Evid. 803(3), Manual for Courts–Martial, United States, 1984, the state-of-mind exception to the hearsay rule. In addition, the military judge instructed the members regarding use of this evidence as follows:

> Now, throughout the course of the trial you have heard of physical altercations occurring between the accused and his wife through the testimony of Mrs. Merica. You heard the statement apparently made by Mrs. Shepard that she was struck in the shoulder by her husband. And you have received other testimony from various witnesses concerning threats made against Mrs. Shepard. How are you to consider this testimony? *This evidence was introduced for the limited purpose of its tendency, if any, to prove that the accused intended to kill Mrs. Shepard and to establish the possible motive that the accused may have had to kill Mrs. Shepard.* You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he therefore committed the offense or any of its lesser included offenses as charged.

(Emphasis added.)

The court below found the military judge erred in several ways in his treatment of this evidence. First, it held (34 MJ at 590–91) that aspects of the evidence should not have been admitted under Mil.R.Evid. 803(3), because they included "statements of 'memory or belief'" expressly prohibited by the rule [2] and, in any event, the other

---

or acts that Mrs. Shepard and Specialist Shepard had prior to the 4th of November when she began living separately from him.
*Cf. United States v. Elmore*, 33 MJ 387, 395–96 (CMA 1991).

**2.** Mil.R.Evid. 803(3), Manual for Courts–Martial, United States, 1984, states:

**Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial**
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \*

(3) *Then existing mental, emotional, or physical condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), *but not including a statement of memory or belief to prove the fact remembered or believed* unless it relates to the execution, revocation, identification, or terms of declarant's will.
(Emphasis added.)

hearsay statements were more prejudicial than probative under Mil.R.Evid. 403. *See United States v. Elmore,* 33 MJ 387 (CMA 1991); *cf. United States v. Elliott,* 23 MJ 1 (CMA 1986). Second, the court concluded that the military judge erred in his instructions to the members by failing to instruct them that Mrs. Shepard's statements could only be used to determine *her* state of mind and not the truth of the matters asserted in those statements which circumstantially showed appellant's state of mind. 34 MJ at 591. However, the court below ruled that erroneous admission of the victim's statements was harmless and the instructional error was waived or also constituted harmless error. 34 MJ at 592.

■ "Failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error." RCM 920(f). However, during pretrial sessions, trial defense counsel did particularly object to admission of this testimony even for the limited purpose which the judge instructed upon. He thus preserved this issue on appeal, so we hold that the court below erred in applying waiver analysis. *See United States v. Langley,* 33 MJ 278, 280 n.3 (CMA 1991) (Although defense counsel "entered no further objection to" the instruction, "either at the time when the military judge ruled or when the judge actually delivered the instruction," appellant's complaint was adequately preserved for appeal because counsel expressed appellant's position and argument when the instruction question first arose).

■ When there has been a timely objection to an error, a harmless-error inquiry is normally made to determine whether that error substantially prejudiced the accused's rights. Art. 59(a); Mil.R.Evid. 103(a). In this regard, we first note that appellant was found not guilty of premeditated murder. Art. 118(1). Thus he clearly was not prejudiced by the improper admission and use of this evidence with respect to that offense. He was, however, found guilty of

the lesser-included offense of unpremeditated murder under Article 118(2) (intent-to-kill element) rather than the also-instructed-upon offense of involuntary manslaughter under Article 119(b), UCMJ, 10 USC § 919(b) (no intent-to-kill element). Moreover, appellant suggests that this evidence and the instruction thereon also precluded the members from finding him guilty of another instructed-upon lesser offense, voluntary manslaughter under Article 119(a) (intentional murder in the heat of passion). We conclude that the erroneously-admitted evidence and the defective instruction thereon also did not prejudice appellant as to these three charges.

The challenged evidence was cumulative of other evidence properly admitted at trial, which compellingly showed appellant's preoffense state of mind by means of his own statements, *e.g.,* the testimony of Sergeant Wong and Private First Class McNair, as well as evidence of appellant's statements to a CID agent. *See United States v. Elliott, supra.* For example, one witness testified that 2 days prior to the murder appellant had stated, "I think I'd be better off if my wife were dead." In addition, three witnesses also testified that the victim was observed having bruises on her body; staying at a friend's house; and seeking marriage counseling. This non-hearsay evidence clearly showed her marriage to appellant was in trouble, a fact relevant to show appellant's motive and intent. Finally, appellate defense counsel has not satisfactorily explained how the erroneously admitted evidence, contrary to the judge's instructions, was even considered on the heat-of-passion question under Article 119(a). Accordingly, neither the erroneously-admitted evidence nor the incorrect instruction was shown to have substantially prejudiced appellant. Art. 59(a).

### III

■ Appellant finally challenges admission in evidence of his sworn written statement given to SA Fratichelli on November 8, 1989, at the local CID office. *See* Mil. R.Evid. 304(a) and 305(a). He asserts that

military police investigators denied him his codal and Manual right to military counsel during his interrogation on the above date. *See* Art. 27, UCMJ, 10 USC § 827; *United States v. McOmber,* 1 MJ 380 (CMA 1976); Mil.R.Evid. 305(e). He argues that military police were required to stop his interrogation and inform him that detailed[3] military counsel had contacted the CID office and desired to immediately consult with him. *See United States v. Dowell,* 10 MJ 36 (CMA 1980); *United States v. Turner,* 5 MJ 148 (CMA 1978).[4] We do not decide this question today; instead, we affirm on the basis that any error in this regard was clearly harmless under the circumstances of this case. *See Arizona v. Fulminante, supra.*

Mil.R.Evid. 305(e) states:

(e) *Notice to Counsel.* When a person subject to the code who is required to give warnings under subdivision (c) intends to question an accused or person suspected of an offense and *knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect with respect to that offense,* the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed.

(Emphasis added.) This rule of evidence is based on the decision of this Court in *United States v. McOmber, supra,* and generally corresponds with it. Drafters' Analysis, Manual, *supra* at A22–14.1 (Change 3). It

extends the servicemember's right to counsel beyond that provided under the Fifth and Sixth Amendment of the Constitution. *See State v. Reed,* 133 N.J. 237, 627 A.2d 630 (N.J.1993). *Cf. Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Nevertheless, on its face this rule is applicable only at the point that the intended questioner "knows or reasonably should know" that counsel has been appointed or retained.

Three undisputed facts in this case establish that appellant was not prejudiced by any violation of this rule in his case. *See* Mil.R.Evid. 103(a). First, prior to the interrogation, appellant was not represented by counsel concerning this offense and the police had no reason to suspect that he had legal counsel. Second, prior to the interrogation, appellant was advised of his right to counsel and waived this right before the military police. Finally, at the time of defense counsel's contact with CID, appellant had already made oral admissions to the same effect as his later written statement to the CID agent. In sum, as found by the military judge and the Court of Military Review, his challenged written statement was cumulative of already admitted evidence of his prior oral statements which was untainted by any subsequent Mil.R.Evid. 305(e) error.

The decision of the United States Army Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

---

**3.** Captain Reed was detailed to represent appellant by a senior defense counsel. *See* paras. 6–2 and 6–9, Army Regulation 27–9 (November 1989). This detail was accomplished after the senior defense counsel had been informed "that a soldier from Kirchgoens has been accused of murdering his wife and is being interrogated by CID in Giessen." We need not decide whether such a detail of counsel, in the absence of a

request by the accused, was required by law or regulation. *See* para. 6–8.

**4.** *Turner* involved a civilian attorney previously retained by an accused on another matter who considered himself the servicemember's general attorney.