**UNITED STATES, Appellee,**

v.

**Dwayne HUNTER, Private First Class,
U. S. Army, Appellant.**

No. 32,651.
CM 433746.

U. S. Court of Military Appeals.

Aug. 27, 1979.

For Appellant: *Captain Stephen D. Half-hill* (argued); *Colonel Alton H. Harvey, Captain Lawrence E. Wzorek* (on brief); *Lieutenant Colonel John R. Thornock, Cap-*

*tain D. David Hostler, Captain William B. Ramsey, Captain Jan W. Serene.*

For Appellee: *Captain Russell S. Estey* (argued); *Major John T. Sherwood, Jr., Captain Lee D. Schinasi* (on brief); *Colonel Thomas H. Davis.*

Amicus: *Lieutenant Michael C. Farrow, JAGC, USNR* (argued); *Lieutenant Colonel P. N. Kress, USMC, Lieutenant Commander N. P. DeCarlo, JAGC, USN* (on brief).

*Opinion of the Court*

COOK, Judge:

In his petition for grant of review, the accused challenged the admissibility of a gun, introduced into evidence at his trial for robbery and other offenses, on the ground that the commander who conducted the search that led to discovery of the weapon was not a "neutral and detached magistrate." The factual framework of the assignment of error resembled that in *United States v. Boswell,*[1] then pending in the Court; as a result, we granted review, and later heard oral arguments on the same day as the arguments in *Boswell.* Differences in the facts led us to separate decisions in this case from that in *Boswell.* On further review of the record, we have concluded beyond a reasonable doubt that, even if the gun was inadmissible in evidence, its presence did not influence the court members in their findings of guilty. *See United States v. King,* 2 M.J. 4 (C.M.A.1976); *United States v. Simpson,* 15 U.S.C.M.A. 18, 34 C.M.R. 464 (1964).

In *Boswell,* the evidence discovered in a search authorized by a commander found to be disqualified, consisted of matter identified by later laboratories tests as two kinds of prohibited substances. Without this evidence, the findings of guilty had no support. Here, as we shall point out presently, the gun discovered in the search of accused's locker was so paltry an appendage to the imposing body of competent evidence

1. 6 M.J. 307, 320 (C.M.A.1979). *Boswell* was one of a quartet of search authorization cases decided in a single opinion. *United States v. Ezell,* 6 M.J. 307 (C.M.A.1979).

of accused's guilt as to justify disregard of possible error by the trial judge in allowing it to come before the court members.

Accused was charged with three offenses. Charge I and its specification alleged robbery of $8.00 from Private First Class Lindsley; the first specification of Charge II averred the unlawful carrying of a concealed weapon; and the second specification of that Charge alleged wrongful communication of a threat by the accused to kill Lindsley if he "squealed on him."

Sometime between 3:00 and 4:00 a. m. on March 24, 1975, PFC Lindsley returned to his barracks at Fort Sill, Oklahoma. About 4:00 a. m. he went to the latrine. There he encountered the accused, whom he knew as a member of his battery and as a resident of the barracks. Both Lindsley and the accused testified to what transpired between them. Defense counsel's statement of the evidence as to which "there is no dispute" is perhaps as succinct as any we could fashion. It is as follows:

PFC Hunter had a weapon;

At one point in time . . . [he] pointed . . . [it] at PFC Lindsley; and

PFC Lindsley . . . had money in his hand which ended up in PFC Hunter's hand.

According to Lindsley, he parted with his money against his will, at gunpoint. He described the gun in detail. He said that the accused had "pulled back the hammer and had his finger on the trigger," and he thought he "would be shot" if he "resisted." He further testified that the accused told him not to "rat" on him, to "say nothing to nobody" and if he did he would kill him. In his testimony, the accused admitted that he had a .22 caliber revolver in his possession when he was in the latrine; that he pulled the gun from his pocket, and "pointed it towards" Lindsley;[2] and that he "took . .

[Lindsley's] money" and left the latrine with it. However, he insisted he was "just messing around," "just playing," and "wasn't intending on an actual robbery." He denied he made any threats to kill Lindsley. As to his possession of a gun, he acknowledged he knew it was "unlawful to carry a weapon in . . . [his] pocket," but he maintained he had bought it, and had it in his "pocket that night," because about two weeks earlier he had been shot at and he wanted the gun for "protection."

Several hours after his encounter with the accused, Lindsley reported the matter, initially to the first sergeant and then to the battery commander. He also apprised them of circumstances from which it could reasonably be concluded that after the accused left Lindsley he put the gun in his locker. Thereupon, the commander and the sergeant went to the accused's cubicle, awakened him, and had him open his locker. In it, they found a .22 caliber revolver, which was the weapon admitted into evidence at trial, over defense objection.

Viewing the evidence as to each offense separately, or considering it in its totality, we have no doubt that the physical presence of the gun before the court members, as an item of evidence, exerted no influence on any of them in determination of the findings of guilty. As to the robbery charge, the evidence established, and defense counsel conceded, that only one factor was the "key" to a decision. In the language of defense counsel, the "key element" was: "What was in PFC Hunter's mind at the time this incident took place?" Both Lindsley and the accused had described the gun in the accused's possession; both testified the accused removed it from his pocket, and pointed it "towards" or "at" Lindsley; and both agreed that the accused took Lindsley's money. No argument has been presented to us, and we discern none, that

---

2. In a pretrial statement which was admitted into evidence without objection, and, which, in response to a question by defense counsel in his direct examination, the accused represented as "true," the accused had said that he had pointed the gun *at* Private First Class Lindsley. Parenthetically, we note that no claim is made

that the accused's testimony at trial was impelled by the alleged erroneous ruling allowing the gun into evidence. *Cf. United States v. Bearchild*, 17 U.S.C.M.A. 598, 38 C.M.R. 396 (1968). *See also United States v. DeWitt*, 3 M.J. 455 (C.M.A.1977).

supports, as a reasonable possibility, a conclusion that a court member might have been influenced to decide the "key element," or any of the other elements, of the offense against the accused because of the physical presence of the gun.

Turning to the threat offense, the accused's own testimony established his possession and display of a gun in his encounter with Lindsley. In the light of his testimony, the gun, as evidence, was virtually immaterial because cumulative. The difference between Lindsley and the accused as to this offense was whether a threat to kill Lindsley if he "squealed" had, in fact, been made by the accused. We are convinced beyond a reasonable doubt that the physical presence of the gun did not influence any court member in his decision to believe Lindsley in regard to this offense, instead of the accused.

Alluding again to defense counsel's summary of the evidence, it is indisputable that testimony from "both sides" established that, "in fact," the accused had a dangerous weapon on his person when he confronted Lindsley. The only remaining question as to the concealed weapon charge, therefore, was, as defense counsel indicated, whether the Government had proven that the possession was "unlawful." Here, too, we are convinced beyond a reasonable doubt that, in deliberating on the findings of guilty as to his defense, no member was influenced in his decision by the fact that the gun was in the courtroom as evidence.

As we conclude that, if error, the trial judge's ruling admitting the gun into evidence was harmless beyond a reasonable doubt as regards all the findings of guilty, we affirm the decisions of the United States Army Court of Military Review.

FLETCHER, Chief Judge (concurring):

Under the rationale of *United States v. Boswell*, 6 M.J. 307, 320 (C.M.A.1979), the gun in this case would not be admissible. I agree that overwhelming evidence of guilt exclusive of the inadmissible item may permit errors of this nature to be harmless.[1]

The test adopted by this court in *United States v. Ward*, 1 M.J. 176, 180 (C.M.A. 1975), was "that before an error founded solely upon the federal constitution can be held harmless under Article 59(a) [Uniform Code of Military Justice], the court must be able to declare a belief that it was harmless beyond a reasonable doubt." I believe the evidence other then the gun supports the verdict of guilty beyond a reasonable doubt.

Judge PERRY concurs in the result.

---

1. *See Fahy v. State of Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Harrington v. State of California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).