UNITED STATES, Appellee,

v.

Roderick PEYTON, Specialist Four, U. S. Army, Appellant.

Dkt. No. 39,242.

CM 438539.

U. S. Court of Military Appeals.

April 13, 1981.

For Appellant: *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Major Grifton E. Carden, Captain Robert D. Ganstine* (on petition).

For Appellee: *Colonel R. R. Boller, Major Ted B. Borek, Captain Harry J. Gruchala* (on petition).

*Opinion of the Court*

EVERETT, Chief Judge:

On April 8, 1979, at Frankfurt, Germany, appellant was tried by a general court-martial military judge sitting alone and was found guilty of wrongful possession of a hypodermic needle and syringe, and wrongful introduction and possession of heroin, in violation of Articles 92 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 2 years, a $15,000 fine, and reduc-

tion to Private E–1. However, in approving the sentence, the convening authority changed the fine to total forfeitures for 18 months and suspended the confinement in excess of 18 months with provision for automatic remission. The United States Army Court of Military Review affirmed the approved findings and sentence in a short-form decision. We subsequently granted review to consider the appellant's claim that certain incriminating oral statements had been obtained from him in violation of Article 31[1] and the Fifth and Sixth Amendments and so should have been suppressed as evidence by the military judge.[2]

## I

Sergeant Beason, a military police investigator, requested authorization from the appellant's battalion commander to search Peyton's barracks room because an informant had reported to him that he had bought heroin from the appellant that morning; that he had recently seen the appellant sell suspected heroin to another individual; and that the appellant was still in possession of heroin in his room. After the commander authorized the search, Beason and three other members of the drug suppression team searched the appellant's room and seized 106 packets of heroin, a needle, syringe, and other paraphernalia. The appellant, the informant, and three other soldiers who were present in the room, were apprehended and taken to the office of the drug suppression team, where they were interrogated.

It is undisputed that, when Sergeant Beason attempted to interview the appellant, he had fully advised him of his rights against self-incrimination. Moreover, when the appellant had indicated that he wanted a lawyer, Beason immediately terminated the interview. However, he allowed the appellant to remain in his office while he completed a Criminal Investigation Division (CID) Form 44, which is a personal data card that the CID required an agent or investigator to complete after interviewing a suspect. Completion of this form did not call for appellant to answer any questions or to supply any information, and Beason just proceeded to fill in the form.

However, as Beason was "completing this paperwork," appellant asked him "how serious of an incident this was." He responded that "recent legal decisions had returned narcotic offenses to the maximum confinement at hard labor for a period not to exceed 10 years." The appellant then inquired if he thought that this "was a reasonable sentence"; and Beason replied that he thought "4 years could be a reasonable sentence but that I didn't want him to believe that he was going to be getting that sentence."[3] The appellant then exclaimed "that he didn't want to go to jail for dope that wasn't his" and "[t]hat he only had one gram of the dope"; he also began to tell how he and two other soldiers had been to Frankfurt to obtain heroin. When Beason told the appellant that he could not discuss the offenses with him because Peyton had already asked for a lawyer, the appellant responded that, although he desired a lawyer, he just wished Beason "to understand that he didn't want to go to jail for dope that wasn't his." When Beason asked, "Is that right?", the appellant answered "yes and at this point gave basically an account of what had transpired the night previous." Again, the investigator explained to appellant that he "was obligated to terminate the interview and that [Beason] could not discuss the case with him," but the appellant said "that he didn't care, that he want-

---

1. Uniform Code of Military Justice, 10 U.S.C. § 831.

2. For various reasons appellant also contended in his petition for grant of review that the items had been seized from his room during the course of an unlawful search, but we did not grant review of this issue. 9 M.J. 398 (1980). Consistent with that denial of review, we now reject appellant's claim that his oral admissions were the poisonous fruit of an illegal search of his room.

3. Beason testified that at the beginning "of each interview" he would clearly explain to a suspect that his agency performed only investigative functions and did not make decisions concerning "any sentences or anything."

ed to tell me about what had happened." There is no evidence that any promises, threats, or inducements were made to induce the appellant to talk.

At the appellant's court-martial, the military judge denied a defense suppression motion to prevent Beason from giving evidence of the appellant's oral confession. Here it is contended that the ruling was erroneous because the appellant had been subjected to "a subtle form of . . . interrogation" which had been designed to elicit his statement. The "interrogation" consisted of Beason's failure to "take any affirmative action to remove appellant to a holding area to await release or consultation with counsel" and having the appellant remain in his office with other law enforcement agents while Beason completed the personal data card.

## II

█ Under the facts of this case, it is clear that no violation of the appellant's Sixth Amendment right to counsel occurred. To demonstrate an infringement of that right, it must be shown that, after formal proceedings had been initiated against an accused and in the absence of his counsel, the Government "deliberately and designedly set out to elicit [incriminating] information from" the accused. *Brewer v.*

*Williams,* 430 U.S. 387, 399, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977); see *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); cf. *United States v. McOmber,* 1 M.J. 380 (C.M.A.1976). The salutary purpose of this principle— which applies whether or not the accused is in custody—is to prevent deliberate "police interference with the relationship between a suspect and his counsel once formal proceedings have been initiated." *United States v. Henry, supra* 100 S.Ct. at 2190 (Powell, J., concurring).[4] However, at the time of appellant's confession, formal proceedings had not been initiated and he had not established a relationship with counsel. Thus, there could not have been any interference with his Sixth Amendment right to counsel. *United States v. Duga,* 10 M.J. 206, 208 n.4 (C.M.A.1981).

█ Likewise, we find no violation of the appellant's *Miranda*[5] and Article 31 rights. The appellant did not testify against the admissibility of his oral confession, even though he could have done so without fear that his testimony would be used against him to establish guilt. *Simmons v. United States,* 390 U.S. 377, 389–94, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); para. 140a(2), Manual for Courts-Martial, United States, 1969 (Revised edition). Thus, Beason provided the only evidence concerning

4. In *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the Sixth Amendment was relied on in holding that the defendant's rights had been violated by his interrogation in the absence of his counsel during an investigation before formal indictment. Of course, Escobedo—unlike appellant in the case at hand—had already established a relationship with an attorney. Moreover, *Escobedo* has been reinterpreted somewhat in later cases. Thus, in *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), the plurality opinion observed:

But the point is that, while members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

The only seeming deviation from this long line of constitutional decisions was *Escobedo*

*v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. But *Escobedo* is not apposite here for two distinct reasons. First, the Court in retrospect perceived that the "prime purpose" of *Escobedo* was not to vindicate the constitutional right to counsel as such, but, like *Miranda,* "to guarantee full effectuation of the privilege against self-incrimination . . ." *Johnson v. New Jersey,* 384 U.S. 719, 729, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882. Secondly, and perhaps even more important for purely practical purposes, the Court has limited the holding of *Escobedo* to its own facts, *Johnson v. New Jersey, supra,* at 733– 734, 86 S.Ct. at 1780–1781, and those facts are not remotely akin to the facts of the case before us.

5. See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

the circumstances under which appellant's statements were made; and in his testimony we find no support for any claim that the statements were obtained improperly. The completion of the CID personal data form in the appellant's presence was only a circumstance that is "normally attendant to arrest and custody." *Rhode Island v. Innis*, 446 U.S. 291, 299, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). In any event, there is no evidence that this procedure, or any other words or actions on the part of the investigators, persuaded the appellant to make his inculpatory statements.

■ Beason's uncontroverted testimony is that the appellant had been fully apprised of his rights—not once but several times. When Peyton had asked for a lawyer, the investigator ceased all questioning and quickly terminated the interview. Thereafter, the appellant himself initiated a conversation with Sergeant Beason to assess his situation. Even though Beason gave no encouragement for appellant to talk about the offenses in the absence of an attorney, the appellant wished to talk—apparently because he believed, despite several warnings, that to do so would aid his cause. This Court will be alert to efforts to bypass statutory or constitutional safeguards by conduct of investigators which is the "functional equivalent" of interrogation. *See United States v. Muldoon*, 10 M.J. 254, 257 (C.M.A.1981); *United States v. Dowell*, 10 M.J. 36 (C.M.A.1980). But that is not the situation with which we must deal in the case at bar. On the evidence before him, the military judge could properly conclude that the appellant insisted on talking to an investigator who, quite properly, warned him of the possible adverse consequences of such a choice. Even after he has requested counsel, a suspect can make a voluntary choice to talk to interrogators; and that choice will be binding upon him. *Cf. Rhode Island v. Innis, supra.* Under these circumstances which appear to have existed in the case at bar, the military judge did not err in admitting appellant's pretrial statements into evidence.

### III

Accordingly, we affirm the decision of the United States Army Court of Military Review.

Judges COOK and FLETCHER concur.