UNITED STATES

v.

Captain Michiel L. DILLON, 308–48–8248 FV United States Air Force.

ACM 22756 (recon).

U. S. Air Force Court of Military Review.

Sentence Adjudged 18 Dec. 1979.

Decided 4 Aug. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Robert G. Gibson, Jr.

Appellate Counsel for the United States: Colonel James P. Porter.

Before POWELL, KASTL and MAHONEY, Appellate Military Judges.

DECISION UPON RECONSIDERATION

PER CURIAM:

We granted the accused's motion to reconsider our earlier unreported affirmance

of his conviction in light of *Edwards v. Arizona*, —— U.S. ——, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Having reconsidered, we find that decision is controlling, and that the accused's confession was taken in violation of his constitutional right to counsel. Thus, we withdraw our earlier decision, set aside the conviction, and order a rehearing.

The accused was apprehended at the apartment of a female enlisted member. The odor of burning marijuana was heavy in the air, and both the accused and his co-actor were apparently under its influence. The trial testimony of the Office of Special Investigations (OSI) agents indicates that at the time of apprehension the accused was stuporous and glassy-eyed, although the full extent of his intoxication may not have become apparent until he was advised of his rights to remain silent and have counsel. According to an OSI agent observing the advice of rights procedure, when the accused was asked if he understood his rights,

... in a very slow tone he went, "Yeah, yeah." He was very—how shall I say, muffled. It was very difficult to understand him. In fact, I believe [the agent] had to ask him again if he did, in fact, understand his rights. He finally got a positive "Yes," he could understand. He was asked if he wished to have an attorney, did he want a lawyer. He said at that time "Yes," and again it was in the same manner. At that time the questioning was stopped, and we terminated his particular advisement.

Approximately 50 minutes later, at the OSI detachment headquarters, after the obvious effects of the marijuana had worn off, and before any attempt was made to obtain counsel for the accused, he was again advised of his rights. The reason given by the OSI agent for the second advice of rights was:

... when I saw him the first time, I considered him to be under the influence. To be absolutely sure that he knew what was going on and that type of thing, in my own mind, I felt it necessary to read-

vise him of his rights because he might not have understood the initial time, and to make absolutely sure.

Following that second advisement of rights, the OSI agent began the standard three questions designed to ascertain whether the accused understands his rights, and his desire regarding his rights to counsel and to remain silent. What transpired at that point is best described in the following colloquy between the trial counsel and the interviewing OSI agent:

Agent: When I finished reading from the card, I asked him, "Do you understand your rights as I have read them to you?" He said, "Yes." When I asked him "Do you desire a lawyer at this time?" He said, "No."

TC: Did he say anything else?

Agent: Yes, he did. The wordage was such like—sort of like a spontaneous exclamation, "I might as well tell you. I'll probably lose my nurse's license. It's all over for my Air Force career," that type of thing.

\* \* \* \* \* \*

TC: What was his appearance at the time he was saying this?

Agent: As I mentioned, when he walked in the room ... he appeared much more what I call normal. His eyes were not glassy. He was coherent. He didn't stagger when he walked down the hall from the sofa where he was sitting, coming towards me to come into the room. He appeared normal.

\* \* \* \* \* \*

TC: What did you say in response to those comments of his?

Agent: I said, "Are you sure? Do you know? Do you understand that you don't have to talk to me? Are you positive?" In fact, I reiterated that a couple of times, because again, I have been in the business awhile and knowing that once the person requests a lawyer he has that right. After I advised him the second time, I was much more confident that, in fact, he did understand at this point in time.

Subsequently, the accused waived his right to remain silent, and during the ensuing interview detailed his extensive involvement in the use and possession of marijuana. The resulting signed, sworn confession was admitted at trial over defense objection.

In *United States v. Hill*, 5 M.J. 114 (C.M.A. 1978), the Court of Military Appeals held that, once asserted, the accused's rights to counsel must be "scrupulously honored." That rule is strict, but does not forever bar subsequent interview in regard to the matter under investigation. *Brewer v. Williams*, 430 U.S. 387, 406–07, 97 S.Ct. 1232, 1243, 51 L.Ed.2d 424 (1977); *United States v. Hill, supra* at 115; *United States v. Muldoon*, 10 M.J. 254 (C.M.A. 1981). *United States v. Peyton*, 10 M.J. 387 (C.M.A. 1981). Reading the entire record, we believe that standard was met in this case. Specifically, as we concluded in our earlier consideration of this case, we find that the OSI agents were genuinely concerned with following proper procedure, and protecting the accused's rights, and that they were surprised by, and reluctant to accept, the accused's waiver of his previously asserted rights to counsel.[1]

The fact remains, however, that twice within an hour, while in continuous custody, the accused was advised of his suspect rights and asked if he wished a lawyer. Despite his initial request for a lawyer, he was not afforded counsel prior to the second questioning. The pertinent holding of the Supreme Court in *Edwards v. Arizona, supra*, appears to be squarely on point:

> ... an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona, supra,* —— U.S. at ——, 101 S.Ct. at 1885.[2] In the case before us, the communication and exchange between the OSI agent and the accused at OSI headquarters were initiated by the OSI agent.[3] Regardless of how well intentioned his motives, the OSI agent's conduct fell within the foregoing proscription because it was he, and not the accused, who initiated the conversation which led directly to the interrogation.[4]

---

1. It is noteworthy that the accused's female co-actor also asserted the right to counsel at the apartment. She, too, was readvised of her rights at OSI headquarters. When she reasserted her right to counsel, she was placed in telephone contact with a lawyer, and no further questioning ensued.

2. As pointed out by the Chief Justice in his concurring opinion in *Edwards v. Arizona*, that case could have been decided on the narrower ground that the accused was required to see the police against his express wishes. The holding of the Supreme Court majority goes a step further however, announcing what appears to be a prophylactic rule against any attempt to reinterview the accused. *See* notes 3 and 4, *infra*.

3. Despite the apparent broadness of the rule announced in the majority opinion in *Edwards v. Arizona, supra*, we do not believe initiation of further communication is always dispositive of the issue. See the concurring opinion of Justice Powell, joined by Justice Rehnquist. But the rule announced by the majority does appear to make *initiation* of communication the

*sine quo non* where the accused has not yet consulted counsel, nor had the reasonable opportunity to do so.

4. Once counsel has been made available to the accused, we do not believe it impermissible for military investigators to initiate communication with the accused to determine whether or not he has actually consulted with counsel. If he *has*, any interview must be preceded by notice to that counsel. *United States v. Lowry*, 2 M.J. 55 (C.M.A.1976); *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976); *United States v. Courney*, 11 M.J. 594 (A.F.C.M.R.1981). If he has *not* consulted with counsel within a reasonable time, he may be legitimately asked if he still desires to do so. In such circumstances, a change of intent by the accused may permit questioning upon full advisement and waiver of rights. *See, United States v. Quintana*, 5 M.J. 484 (C.M.A.1978). Caution must be exercised however, where it appears that the accused's procrastination in consulting counsel is merely an indirect method of asserting his right to remain silent.

■ With the vantage of hindsight, and pause for reflection, it is relatively easy to identify the precise point in time when the OSI agent's good intentions ran afoul of the accused's constitutional rights.[5] That point was when the OSI agent again asked the accused if he wanted a lawyer.[6] Bringing into question the previously asserted right to counsel was unnecessary to insure that the accused understood his rights.[7] Since this exchange occurred after the accused's request for counsel, and prior to counsel being made available to him, we are constrained to conclude that the ensuing confession was obtained in violation, albeit unintentional, of the accused's right to counsel. *Edwards v. Arizona, supra; Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *United States v. Tempia*, 16 U.S.C. M.A. 629, 37 C.M.R. 249 (1967).

■ In view of the foregoing, we conclude that the accused's confession was improperly admitted in evidence against him. We also find that consideration of the confession by the trial court was not, as to any offense of which the accused stands convicted, harmless error beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Ward*, 1 M.J. 176 (C.M.A.1975). Accordingly, the findings of guilty and the sentence are incorrect in law, and are hereby set aside. A rehearing is ordered.

**5.** If the accused had initially *waived* his rights while intoxicated, no one would question the soundness of the delay and subsequent readvice by the OSI agent. Indeed, it is likely that would have occurred. The facts in this case make it clear that the initial advice of rights was merely precautionary, and that there was no intent to interview the suspects at the scene of apprehension. Commendably, proceedings at the scene were curtailed and expedited to minimize the possibility that the accused and his co-actor might be arrested by local police in a foreign country noted for dealing harshly with drug offenders.

**6.** In view of the accused's previous request for a lawyer, and the fact that he had not yet had opportunity to consult a lawyer, the conversation initiated by the OSI agent's repetition of the advice of rights could not have led to a

constitutionally valid admission or confession, *Edwards v. Arizona, supra*, and that second advice of rights was not legally required for any other purpose.

**7.** If there is a rule to be gleaned here, *see* note 6, *supra*, it is perhaps this: a suspect's request for legal counsel, regardless of his physical or mental condition, is the *end* of the interview. The suspect should not again be advised of his rights, nor asked if he still desires counsel until (1) the suspect has had adequate opportunity to consult with counsel, *see* note 4, *supra*, or (2) the suspect himself initiates further exchange with authorities in regard to the matter under investigation. *United States v. Peyton*, 10 M.J. 387 (C.M.A. 1981); *United States v. Courney*, 11 M.J. 594 (A.F.C.M.R. 1981).