**UNITED STATES, Appellee,**

v.

**Private (E–1) Donald R. LEJEUNE, SSN 292–64–6258, United States Army, Appellant.**

**SPCM 16054.**

U. S. Army Court of Military Review.

18 Feb. 1982.

Opinion of the Court on Reconsideration 31 March 1982.

Major Elliot J. Clark, Jr., JAGC, and Captain Kenneth G. Gale, JAGC, were on the pleadings for appellant.

Major John T. Edwards, JAGC, Major Michael L. DeBusk, JAGC, and Captain Peter M. Donawick, JAGC, were on the pleadings for appellee.

Before CARNE, Senior Judge, and O'DONNELL and FOREMAN, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Judge:

The appellant was charged with breaking into the barracks room of a Private Everett, forcing open Everett's wall locker and stealing his stereo equipment. He was convicted of larceny and housebreaking, in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 930 (1976), and sentenced to a bad-conduct discharge, confinement at hard labor for two months, and partial forfeitures for six months. The convening authority approved the sentence.

The appellant contends that the military judge erred by considering a pretrial statement made by the appellant to a Sergeant Love. On the evening of 6 November 1980, while sitting in his barracks room, Sergeant Love heard a noise in the hallway. He looked out his door and saw the appellant in front of Everett's door, apparently tampering with the lock. Love and the appellant had served in the same battery, and lived in the same building until a few days before 6 November, and knew each other. Love knew that the appellant had previously lived in the room across the hall from Everett's but that he no longer lived in the building. Love asked the appellant what he was doing and the appellant replied that he had left something in Everett's room.

At trial the appellant moved to suppress the evidence of appellant's statement that he had left something in Everett's room, on

the ground that Love suspected the appellant of an offense and therefore had a duty to warn him of his rights but failed to do so. *See* Mil.R.Evid. 304. The military judge denied the motion to suppress.

■ We are not satisfied that the prosecution met its burden of establishing that no warning was required. *See* Mil.R.Evid. 304(e); *cf. United States v. Lewis*, 12 M.J. 205 (C.M.A.1982) (officer required to warn servicemember before asking why servicemember had failed to stand at attention during flag-raising ceremony). The fact that the appellant's response was exculpatory does not relieve the prosecution of its burden. *See* Mil.R.Evid. 304(c)(2). The evidence indicates that Love was not acting in an individual, unofficial capacity as an interested occupant of the building. To the contrary, Love testified that "being an NCO I feel that I should ask that individual what he is doing." We hold that the military judge erred by admitting the evidence over defense objection.

■ Ordinarily reversal is not required unless an erroneous ruling materially prejudices a substantial right of the appellant. *See* Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a) (1976); Mil.R. Evid. 103(a); *see also* Fed.R.Crim.P. 52(a). However, the Court of Military Appeals has held that, "[U]tilization of an accused's pretrial statement, without proof of compliance with the warning requirements, requires reversal as to those offenses to which the statement relates, regardless of the compelling nature of the other evidence of guilt." (citations omitted) *United States v. Kaiser*, 19 U.S.C.M.A. 104, 106, 41 C.M.R. 104, 106 (1969). Read literally, the *Kaiser* rule would appear to require reversal in any case in which an accused's pretrial statement is introduced in evidence but determined on appellate review to be inadmissible. However, we do not believe that *Kaiser*, which involved a clearly inculpatory statement, intended to apply such a broad rule of automatic reversal to cases such as this, in which the accused's statement was wholly exculpatory and, if believed, would warrant his acquittal. All of the cases cited

in *Kaiser* involved inculpatory statements. The *Kaiser* decision is based on the rule announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. Clearly, where an inculpatory statement is received along with other evidence, it is impossible to determine what weight the trier of fact gave the statement. Consequently, in such cases it is impossible to conclude that the erroneous admission of the statement was harmless beyond a reasonable doubt.

However, in this case the incriminating nature of the appellant's encounter with Sergeant Love arose from the appellant's acts, not his exculpatory explanation of his suspicious behavior. The appellant's exculpatory remark to Sergeant Love detracted from rather than added to the weight of the prosecution's case. Accordingly, since the appellant's statement did not contribute to his conviction in any way, we are satisfied beyond a reasonable doubt that its admission was harmless error.

■ The appellant also contends that the evidence is insufficient to support his conviction. We disagree. The prosecution established that the appellant knew that Everett had expensive stereo equipment in his wall locker. The appellant was in debt before the larceny but appeared to have ample money afterwards. The appellant was observed tampering with Everett's door on the evening of 6 November 1980. Someone apparently entered Everett's room by removing a ceiling panel while Everett was on duty at a radar site near the Demilitarized Zone from 6–12 November. The appellant had access to the room located across the hall from Everett's, in which a ceiling panel was found displaced shortly after the larceny was reported on 12 November. A Korean house attendant saw the appellant in the attic above the false ceiling in early November. On 10 November, at a time of night when the building usually was unoccupied, Sergeant Love saw

the appellant coming out of the room across the hall from Everett's, carrying a box of a size used for stereo components. The box was partially concealed with an Army blanket.

We believe that these circumstances, taken together and uncontroverted, are sufficient to establish beyond a reasonable doubt that the appellant broke into Everett's room and stole his stereo equipment.

The findings of guilty and the sentence are AFFIRMED.

Senior Judge CARNE and Judge O'DONNELL concur.

## OPINION OF THE COURT ON RECONSIDERATION

FOREMAN, Judge:

We granted the government's motion to reconsider that part of our earlier holding that the appellant's statement to a noncommissioned officer, Staff Sergeant (E–6) Love, was inadmissible because it was not preceded by the required warning. *United States v. Lejeune*, 13 M.J. 563 (A.C.M.R. 18 February 1982). The government contends (a) that Love did not suspect that the appellant was involved in any criminal activity; (b) that Love was not acting in an official capacity, and (c) the appellant did not perceive the inquiry as more than a casual conversation. We disagree.

Sergeant Love, the appellant and the victim were all assigned to the same unit and lived in the same barracks until the appellant moved out of the building sometime prior to 6 November 1980.

Sergeant Love initially testified that when he investigated a noise in the hallway of his barracks he saw the appellant "standing outside the door tampering with the lock." Sergeant Love went on to testify that he felt he had a duty as a noncommissioned officer to investigate whenever he suspected someone of tampering with another's property.

The burden was on the prosecution to establish that a warning was not required. Mil.R.Evid. 304(e). We do not believe that

the government met its burden in this case. Although Sergeant Love was reluctant to characterize the appellant as a "suspect," it is clear that he thought the appellant was trying to break into the victim's room and that he considered it his duty to inquire about the appellant's behavior.

The government also argues that Sergeant Love was acting in a private, unofficial capacity. Love's testimony that he felt that he had a duty as a noncommissioned officer to inquire contradicts the government's position.

Furthermore, even if Sergeant Love intended his inquiry to be private and unofficial, we are not satisfied that the government met its burden of establishing that the appellant perceived the inquiry as a casual conversation rather than an official interrogation.

> [I]n the military setting in which we operate, which depends for its very existence upon superior-subordinate relationships, we must recognize that the position of the questioner, regardless of his motives, may be the moving fact in an accused's or suspect's decision to speak. It is the accused's or suspect's state of mind, then, not the questioner's, that is important.

*United States v. Dohle*, 1 M.J. 223, 226 (C.M.A.1975). Article 31, 10 U.S.C. § 831 applies to situations far more subtle than the typical civilian interrogation. "Because of a subordinate military person's obligation to respond to the command of his superior, Congress enacted Article 31 to serve as a protection against the inherent tendency of that relationship, either directly or subtly, to induce an accused to respond to a question by the superior." *United States v. Lewis*, 12 M.J. 205, 206 (C.M.A.1982). Under normal circumstances, a private feels compelled to respond to a question from a staff sergeant. In this case the appellant knew that he was being questioned by a staff sergeant about his suspicious behavior. We are not satisfied that the prosecution met its burden of establishing that appellant's response was not induced by Love's status as a noncommissioned officer.

We do not suggest that every verbal confrontation of a suspect by a military superior, even if phrased in the form of a question, constitutes an interrogation within the meaning of Article 31. However, under the specific facts of this case, we find that Sergeant Love's question was more than a verbal confrontation designed to stop further illegal activity; it was a demand for an explanation from a suspect.

The decision of this Court, dated 18 February 1982, is reaffirmed and remains in effect.

Senior Judge CARNE and Judge O'DONNELL concur.