**UNITED STATES, Appellee,**

v.

**Specialist Four Cesar B. ALBA, SSN 018–50–1760, United States Army, Appellant.**

**SPCM 17261.**

U. S. Army Court of Military Review.

11 Jan. 1983.

---

**574**

Captain Judson W. Roberts, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, and Captain Joseph A. Russelburg, JAGC.

Captain Richard G. Mann, Jr., JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Captain Thomas E. Booth, JAGC.

Before FULTON, COHEN and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

COHEN, Judge:

Appellant was convicted, contrary to his pleas, of several specifications of willful damage to non-military property and of larceny. The primary issue on appeal is whether the military judge properly admitted into evidence appellant's confession to these offenses.

Between 0115 and 0200 hours on 27 September 1981, a military police patrol observed and reported three abandoned, but apparently undamaged, vehicles along a one- or two-mile stretch of Copperas Cove Road on Fort Hood, Texas. Driving this stretch some two or three hours later, the patrol noticed that the vehicles had been vandalized and various articles removed from them. Near one of the damaged vehicles, the patrol discovered a Chevrolet El Camino, wrecked in a ditch. Articles from the abandoned vehicles were in the back of the El Camino. A radio check disclosed the El Camino was owned by appellant. At 0530 hours, appellant and one Private Trombley were found walking along Copperas Cove Road about three quarters of a mile from the site of the El Camino. They had grease on their hands, arms and shirts. They were apprehended and taken to the military police station.

At the police station, appellant was advised of his rights and, at 0655 hours, invoked his right to counsel by checking the appropriate block on Department of Army (DA) Form 3881 (Defense Exhibit A). He was then placed in a holding cell. No effort was made to obtain counsel for him.

At 1515 hours, appellant and Trombley were taken to the office of Special Agent Gonzales, Criminal Investigation Command (CID). Appellant sat in the hall outside Agent Gonzales' office for fifty minutes while Trombley, who had also earlier requested counsel, was interviewed. Appellant was brought in to speak with Agent Gonzales after Trombley left. Although Agent Gonzales was aware that appellant had earlier asked to see counsel, he questioned appellant to obtain personal information needed to fill out an "Interview Worksheet," CID Form 44. Agent Gonzales then told appellant he had a copy of the rights warnings form upon which appellant had indicated he wanted a lawyer, and asked appellant whether he still wanted a lawyer present. Appellant asked what Gonzales thought he should do and Gonzales replied that it was up to appellant. Agent Gonzales then advised appellant of his rights,

again using a DA Form 3881. This time appellant executed the waiver portion of the form and confessed.

At trial, defense counsel moved to suppress the CID Form 44 and appellant's confession. The military judge granted the motion as to the first document; but, finding appellant "voluntarily chose to waive" his right to remain silent and to have an attorney present, the military judge admitted his confession.

Appellant relies on *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), in asserting his confession should have been suppressed. We find his reliance well placed and hold the military judge erred by admitting the confession in evidence.

In *Edwards,* the Supreme Court fashioned what it termed "additional safeguards" to ensure the waiver of *Miranda*[1] rights is knowing, intelligent and voluntary:

> [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386 (footnotes omitted).

▆▆▆ A suspect's invocation of counsel rights does not forever bar reinterrogation, *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); however, it does bar further questioning until such time as the suspect has been afforded the opportunity to consult with counsel. *United States*

*v. Whitehouse,* 14 M.J. 643 (A.C.M.R.1982). Because the authorities did not provide appellant with the opportunity to consult with counsel, they were precluded from initiating further communication with him. Despite this, the authorities initiated the meeting at which appellant ultimately confessed by taking him to speak with Agent Gonzales. The Government argues that Agent Gonzales' interview of appellant was intended only to elicit "administrative" information and that appellant validly waived his right to the presence of counsel before any *"Miranda* interrogation" began. While it is somewhat difficult to understand why any data about appellant could not have been gathered as easily from his personnel file, some civilian courts have held that questions intended to elicit only administrative matter, as during an initial "booking," do not run afoul of *Miranda's* requirement, 384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 707, that once a suspect requests counsel, all questioning cease. *See United States v. Booth,* 669 F.2d 1231, 1238 (9th Cir.1981); *United States v. Foskey,* 636 F.2d 517, 522 n. 3 (D.C.Cir.1980). *But see Proctor v. United States,* 404 F.2d 819, 820–21 (D.C.Cir.1968). Some courts have also permitted further questioning to clarify an equivocal request for counsel. *Nash v. Estelle,* 597 F.2d 513 (5th Cir.) (en banc), *cert. den.* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979); *State v. Lewis,* 645 P.2d 722 (Wash.App.1982); *Daniel v. State,* 644 P.2d 172 (Wyo.1982).

Here, however, appellant's request for counsel was apparently unequivocal. Assuming, without deciding, that Agent Gonzales could properly question appellant on "administrative matters," his subsequent question, whether appellant still maintained his desire to see counsel, was improper. It amounted to a request that appellant reconsider his initial invocation of rights. As the interview was initiated by the Government after an apparently unequivocal request for counsel and without affording appellant the opportunity to contact counsel, Agent Gonzales' question was in violation of the proce-

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

dural safeguard established in *Edwards*.[2] *United States v. Dillon,* 11 M.J. 922, 925 (A.F.C.M.R.1981) (questioning previously asserted right to counsel unnecessary and contrary to *Edwards*); *United States ex rel. Kimes v. Greer,* 527 F.Supp. 307 (N.D. Ill.1981) (police inquiry as to whether suspect would talk with them, made several hours after suspect had requested counsel, violated "broad, clear and unambiguous" holding of *Edwards* that police cannot initiate questioning); *see also United States v. Priest,* 409 F.2d 491 (5th Cir.1969) (unequivocal request for counsel precludes further inquiry into waiver). The resulting waiver cannot, therefore, be considered effective, and the confession was inadmissible.

■ Error of constitutional dimension requires reversal unless it is determined harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Ward,* 1 M.J. 176, 179–80 (C.M.A.1975). The manner of making such a determination is itself open to some doubt. The Supreme Court has applied three tests: (1) focusing on the erroneously admitted evidence or other constitutional infraction to determine whether it might have contributed to the conviction, *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Chapman v. California, supra; Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); (2) disregarding the erroneously admitted evidence where overwhelming evidence supports the conviction, *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Schneble v. Florida,*

405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); and (3) determining whether the erroneously admitted evidence is merely cumulative, duplicating properly admitted evidence, *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). *See* Field, *Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale,* 125 U.Pa.L.Rev. 15 (1976). The Court of Military Appeals has used the first two tests, more or less interchangeably. *United States v. Hunter,* 7 M.J. 287 (C.M.A.1979) (erroneous admission of weapon exerted no influence on members where it was merely a "paltry ... appendage to the imposing body of competent evidence of [the] accused's guilt"); *United States v. Ross,* 7 M.J. 174 (C.M.A.1979) ("overwhelming evidence" standard consistent with "contribution" standard); *United States v. Moore,* 1 M.J. 390 (C.M.A.1976) (in view of weakness of prosecution case, improper reference to accused's request for counsel may have contributed to conviction and requires reversal); *United States v. Ward,* 1 M.J. at 180–81 (test for harmless constitutional error is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction").

■ We can imagine cases in which application of the "contribution" and "overwhelming evidence" tests should logically lead to opposite results. Where a detailed and convincing confession is improperly admitted and is corroborated by other evidence of the most overwhelming nature, error could be held harmless beyond a reasonable doubt under the "overwhelming evidence" standard. Nevertheless, it would

2. In reaching this conclusion, we are aware that Justice Powell, concurring in the result in *Edwards,* expressed his belief that "police legitimately may inquire whether a suspect has changed his mind about speaking to them without an attorney." *Edwards v. Arizona,* 451 U.S. 479, 490, 101 S.Ct. 1880, 1888, 68 L.Ed.2d 378, 390 (1981). We believe this is contrary to the majority opinion which creates a new layer of protection against unintelligent waiver of counsel rights. 451 U.S. at 484, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. This protection does not, as Justice Powell suggests, erect an "obstacle" preventing police from ascertaining

whether a suspect has reconsidered his original request for counsel, but rather it prevents police from ignoring a request for counsel by a suspect who is not at liberty. *See United States v. Muldoon,* 10 M.J. 254 (C.M.A.1981); *United States v. Hill,* 5 M.J. 114 (C.M.A.1978). It requires only that authorities who would seek a reconsideration of such a request afford the suspect an opportunity to contact counsel. If the suspect fails to avail himself of that opportunity, authorities may then properly reinitiate questioning. *See United States v. Whitehouse,* 14 M.J. 643 (A.C.M.R.1982).

be difficult to conclude that the accused's personal admission of guilt might not have influenced the fact-finder and, thus, contributed to the findings of guilty. As another panel of this Court recently observed, "Clearly, where an inculpatory statement is received along with other evidence, it is impossible to determine what weight the trier of fact gave the statement. Consequently, in such cases it is impossible to conclude [under the 'contribution' standard] that the erroneous admission of the statement was harmless beyond a reasonable doubt." *United States v. Lejeune,* 13 M.J. 563, 564 (A.C.M.R.), *pet. denied,* 14 M.J. 224 (C.M.A.1982).

We have found no decision since *United States v. Ward, supra,* in which the Court of Military Appeals has held admission of a constitutionally defective confession harmless beyond a reasonable doubt.[3] Absent the proper admission of several consistent confessions in addition to that improperly admitted, *see e.g., Milton v. Wainwright, supra,* it is difficult to conceive of a case in which the independent evidence of guilt is so overwhelming as to render nugatory the influence of an erroneously admitted confession. In the instant case, the Government did present a "strong 'circumstantial web of evidence'" of appellant's guilt, in addition to appellant's confession. *Chapman v. California,* 386 U.S. at 25–26, 87 S.Ct. at 829, 17 L.Ed.2d at 711. We cannot conclude, however, that this evidence was so overwhelming that it effectively neutralized the undoubted influence of appellant's confession on the members. We therefore hold the military judge's error in admitting the confession was not harmless beyond a reasonable doubt.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge FULTON and Judge NAUGHTON concur.

---

3. For confessions obtained in violation of Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831 (1976), the Court of Military Appeals has set aside findings of guilty "infected" by the error without regard to the compelling nature of other evidence or the impact of the inadmissible confession. *United States v. Hall,* 1 M.J. 162 (C.M.A.1975). *See United States v. Dowell,* 10 M.J. 36, 46 (C.M.A.1980) (Cook, J., dissenting).