**UNITED STATES**

v.

**Sergeant Ricki L. SPENCER, FR 313–68–6806, United States Air Force.**

**ACM S26491.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 March 1984.

Decided 30 Nov. 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Kevin L. Daugherty.

Before HODGSON, FORAY and MURDOCK, Appellate Military Judges.

## DECISION

MURDOCK, Judge:

The appellant was convicted, contrary to his pleas, of receiving stolen government property. He was sentenced to a bad conduct discharge, confinement at hard labor for two months, forfeiture of $397.00 per month for two months, and reduction to airman basic. At trial, and on appeal, he has vigorously argued that certain oral and written statements he made to a security police investigator were obtained illegally and should have been excluded. We agree.

Sometime in early February 1984, the appellant and Cris, the dependent son of an active duty senior master sergeant, were discussing home computers. He told Cris that he had a friend who was looking for a computer, and Cris told him that he intended to "take" a computer from the Torrejon High School sometime in the future.[1] Later during the month, Cris and a classmate stole two Atari 800 computers and associated hardware from the high school. Two days later, Cris took part of the equipment to the appellant's quarters. After examining the equipment and remarking on the THS markings on it, the appellant drove Cris to his classmate's house where they retrieved the rest of the computer equipment. That night the appellant called the prospective customer, an Air Force master sergeant, and told him he had a computer. The next day the master sergeant met the appellant at the gym and told the appellant to put the computer in his car. The following day the master sergeant told the appel-

lant he did not want to buy the equipment because it was obviously used and possibly stolen. The appellant took the equipment back and left it in the trunk of his car.

In the meantime, Cris had confessed his involvement in the theft to his father who then went to the appellant's house to recover the equipment. The appellant expressed surprise when he was told that the equipment had been stolen, and returned it to Cris' father who then took it to the Torrejon Air Base Chief of Security Police.

The next morning, the appellant was apprehended by a security police investigator, Sergeant R, and taken to police headquarters for questioning. There he was warned of his rights, notified that he was suspected of receiving stolen government property, and asked to make a statement. He refused to make a statement and requested an attorney. At this point the interview was ended and he was released.

The next day, he was again detained and taken to the police station. There he was told by Sergeant R that the Chief of Security Police had directed that he be picked up as a suspect of communicating a threat.[2] Sergeant R then prepared a statement form, using a form entitled "Statement of Suspect."[3] That form notified the appellant that he was suspected of receiving stolen government property. Oddly, Sergeant R told him orally that he was also suspected of communicating a threat, but he did not include that offense on the form. Sergeant R told the appellant that he did not want to know anything about his personal involvement in the theft, but only wanted to know what he knew about the thefts. To that end, Sergeant R had the appellant draft a purported waiver of the right to consult an attorney that he had

---

1. Torrejon High School is part of the Department of Defense Dependent School System.

2. This was apparently based on a visit the appellant made to Cris' house after he was released by the police after the initial session. He told Cris' mother something to the effect that if he

went down for the computer theft, everyone was going to go down. No charges were ever preferred against the appellant based on this incident.

3. Air Force Form 1168.

asserted in response to questioning the previous day.[4]

After this "waiver" the appellant discussed his involvement with the investigator, and the bulk of the conversation was reduced to writing. The written statement describes his contacts with Cris, Cris' father, and the customer, but does not contain any evidence that the appellant thought the computer was stolen. At trial, the government introduced this statement and testimony about the oral statement. The government also presented extensive independent evidence of the appellant's involvement in the offense. Through the testimony of Cris, his classmate accomplice, Cris' father, the customer who rejected the computer, and the computer teacher at the high school, they established every element of the offense.[5]

■ Although it is basic that once a military suspect has requested a lawyer all questioning must cease until he is provided one, it is possible to retract such a request and allow police questioning. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *United States v. Dillon*, 11 M.J. 922 (A.F.C.M.R.1981).

■ While police must cease questioning a suspect about the offense concerned when the suspect asks for a lawyer, they may question the same person for a different, unrelated crime if he decides to submit to questioning, after advisement of rights and proper waiver. In such a case, a waiver relating to the first offense would not be needed. The problem arises when, as in this case, the offenses being investigated are related.

■ During the first interview, the appellant requested counsel and the police properly terminated their questioning. Mil. R.Evid. 305(f). However, the next day they tried to question him about the theft of the computers. An essential element of the offense of receiving stolen property is knowing that the property is stolen. To require suspects of that offense to reveal their knowledge of the underlying theft is to require confessions to that element of the crime. Because of this, the appellant must either have seen a lawyer, as he requested, or waived his request before he was questioned again about the offense, or any element of the offense.

Having found that consultation with an attorney or a waiver was required in this case, we must now see whether the appellant's purported waiver was effective.[6] The United States Supreme Court dealt with this problem in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *reh. den.* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984. The Court stated that

> (A)lthough we have held that after initially being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation, (citation omitted), the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing that he responded to further police-initiated cus-

---

4. The "waiver" said: "Concerning the rights advisement on the night of the 24th Feb 84, I requested legal counsel for the charge of receiving government property. Today I waive my right to legal counsel for the knowledge I have concerning the computers, but request a lawyer for any of my involvement. No questions were asked concerning my involvement."

The statement which the appellant made after his "waiver" described how Cris had approached him, told him that a friend had some computers for sale, and asked him to tell Cris if he knew of any potential customers. It further describes how the appellant later told Cris he knew of a

customer, and how Cris told him he had a computer available. The appellant described taking Cris to his classmate's house, getting the computer and later giving it to the customer. Further, how the customer rejected it because it was used. Finally, how the appellant had returned the computer to Cris' father.

5. Department of Army Pamphlet 27–9, Military Judges' Benchbook, May 1982, 3–359.

6. There is nothing in the record to indicate that the appellant had consulted counsel before he executed the purported waiver.

todial interrogation even if he has been advised of his rights. (footnote omitted) We further hold that an accused, ..., having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiated further communication, exchanges, or conversations with the police.

■ Here the appellant did not initiate the contact with police. He was detained and brought to the police station on the orders of the Chief of Security Police. Once at the station, he was rewarned of his rights concerning the prior offense and asked to waive his right to counsel so that he could make a statement about his knowledge of an essential element of that prior offense. The record has no evidence that counsel had been made available to him since the time he requested it. In fact, his attempt at a waiver further supports the conclusion that he had not seen an attorney. Accordingly, we find that he did not initiate the second discussion with the police and his waiver of his right to counsel was made as a result of police suggestion. The statements he made after his purported waiver were therefore involuntary and are inadmissible.

■ We must now evaluate the effect of our finding these statements to be inadmissible. An error of constitutional dimension requires reversal unless it can be determined beyond a reasonable doubt that the error was harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Ward*, 1 M.J. 176 (C.M.A.1975). Three tests have developed to determine whether a constitutional error is harmless beyond a reasonable doubt:

(1) focusing on the erroneously admitted evidence or other constitutional infraction to determine whether it might have contributed to the conviction, (citations omitted); (2) disregarding the erroneously admitted evidence where overwhelming evidence supports the conviction, (citations omitted); and (3) determining whether the erroneously admitted evidence is merely cumulative, duplicating properly admitted evidence, (citations omitted).... The Court of Military Appeals has used the first two tests, more or less interchangably.

*United States v. Alba*, 15 M.J. 573 (A.C.M.R.1983).

Most military cases have found such errors harmless only when they concerned something other than the accused's own statements. For example, admitting hearsay testimony of a victim [7], striking testimony of a defense witness who, on grounds of self incrimination, declines to submit to cross-examination [8], and mention by the trial counsel that the accused chose to remain silent prior to trial [9], have all been held to be harmless on the facts of the particular case. On the other hand, cases involving a direct statement by the accused are usually held to have been prejudicial to the accused.[10]

■ One of the critical elements of proof in the present case was that the appellant had received certain computer equipment.[11] Although his statements stopped short of being confessions, they did admit this essential element of proof. As the Army Court of Military Review has noted, "where an inculpatory statement is received along with other evidence, it is impossible to determine what weight the trier of fact gave the statement." *United States v. Lejeune*, 13 M.J. 563, 564 (A.C.M.

---

7. *United States v. Thornton*, 16 M.J. 1011 (A.C.M.R.1983).

8. *United States v. Richardson*, 15 M.J. 41 (C.M.A.1983).

9. *United States v. Fitzpatrick*, 14 M.J. 394 (C.M.A.1983).

10. *United States v. Dillon*, 11 M.J. 922 (A.F.C.M.R.1981); *United States v. Alba*, 15 M.J. 573 (A.C.M.R.1983). *Contra United States v. Simmons*, 11 M.J. 515 (N.C.M.R.1981); *United States v. Lejeune*, 13 M.J. 563 (A.C.M.R.1982).

11. Department of Army Pamphlet 27–9, Military Judges' Benchbook, May 1982, 3–359.

R.1982). While we do not agree that statements by an accused will always be found to be harmful, preferring to view each case individually, we believe the Army Court's statement applies in the present case. We hold that admitting the accused's statements was not harmless error beyond a reasonable doubt.

Accordingly, the finding of guilty and the sentence are incorrect in law and are set aside. A rehearing may be ordered.

HODGSON, Chief Judge and FORAY, Senior Judge, concur.